# SUPREME COURT

OF THE

## STATE OF ILLINOIS,

DELIVERED

## DECEMBER TERM, 1833, AT VANDALIA.

---

### LEWIS PANKEY, plaintiff in error *v.* THE PEOPLE OF THE STATE OF ILLINOIS, defendants in error.

*Error to Johnson.*

Perjury consists in falsely swearing to a fact material to the point in issue, before a tribunal having legal authority to enquire into the cause or matter investigated.

A grand jury have no power to enquire whether an officer has been guilty of taking illegal fees for the service of process.

W. G. GATEWOOD, for the plaintiff in error.

J. SEMPLE, Attorney General, for the defendants in error.

SMITH, Justice, delivered the opinion of the Court:

THIS case comes before the Court on a writ of error. The plaintiff in error was indicted, tried, and convicted on a charge of perjury, in the Circuit Court of Pope county. A new trial was afterwards awarded, the *venue* in the case changed to Johnson county, where a second trial and conviction was had. The plaintiff in error, while the cause was pending in the Circuit Court of Pope, and before pleading to the indictment, interposed a motion to quash the indictment, which was overruled by the Court: afterwards a bill of exceptions to the decision of the Johnson Circuit Court was taken by consent of parties; and in which is embodied the evidence given in the cause on its trial in the Circuit Court of Johnson county.

The indictment avers, that at a regular term of the Circuit Court of Pope county, before the grand jurors, regularly empannelled and sworn to enquire in and for said county, a certain complaint was made by one Lewis Pankey, against one John W. Womack, for taking illegal fees as a constable, in order to found an indictment against said Womack, as a constable of the said county, to be found by said grand jury; and that the said Lewis Pankey, being of lawful age, and being first duly sworn by the foreman of the said jury, the said foreman having lawful authority to administer the oath in that behalf, on being interrogated of and concerning the taking and receiving of said illegal fees, and whether the services for which such fees were taken, had been performed at the request, and by the consent of the said Lewis Pankey, he, the said Lewis, unlawfully and maliciously, intending to induce the jurors to find such bill of indictment against the said Womack, and to injure the said Womack, did falsely, knowingly, and corruptly, by his own act and consent, depose and give in evidence, among other things, before the said jurors, in substance and to the effect " that he, the said Lewis Pankey, did not agree nor give orders to the said Womack, constable as aforesaid, to summon a jury in his case with Daniel Vineyard, before that time tried, nor was it his, the said Lewis Pankey's, wish to have a jury to try it;" whereas in truth and in fact the said Lewis did agree and give orders to the said constable to summon a jury in his case with Daniel Vineyard, and was anxious and willing that his said case should be tried by a jury. It further avers, that the matter thus alleged to have been sworn to, was material to the point of enquiry in issue before the grand jury, in this, that if the said Lewis had not agreed or given orders to the said constable to summon such jury, then the said Womack was guilty of taking illegal fees from the said Lewis; but if he had given such orders and agreed that the said constable should summon a jury, then the said constable was not, and had not been guilty of taking such illegal fees.

It will be perceived from this recital of the averments in the indictment and assignment of the perjury, that two questions naturally present themselves as subjects of direct enquiry, and upon which the correctness of the decision of the Circuit Court, in refusing to quash the indictment, must necessarily depend. Those questions are, whether the grand jury had any legal authority to institute an enquiry and examination into the act of Womack, as a constable, for the taking of illegal fees, as a criminal and indictable offence; and the materiality of the testimony given by Pankey before the grand jury in relation to the enquiry with reference to the alleged taking of such illegal fees.

It will not be doubted that one of the essential ingredients necessary to constitute legal perjury, is, that the tribunal or body

before whom the false swearing is alleged to have been committed, must have legal authority and power to enquire into the cause or matter investigated. Apply this principle then to the case before us. From whence could the authority of the grand jury be deduced to institute an enquiry into an officer's taking illegal fees for the service of process? It is not a criminal act, nor could an indictment be founded thereon, be the fact of taking illegal fees ever so clearly established. A remedy has been provided by the infliction of a penalty for such acts; but the modes of proceeding to enforce such penalty are entirely of a civil nature. How, then, could the grand jury have had jurisdiction over the subject matter of the enquiry? It is too evident to doubt that it was a subject of enquiry which they had neither the rightful authority to examine, nor upon which to found an indictment, let the facts have ever so clearly established the actual taking of illegal fees. But it will be also perceived by the second point, the assignment of the perjury is made to consist in falsely stating that Pankey had not agreed nor given orders to the constable, Womack, to summon a jury in his case with Daniel Vineyard, before that time tried, nor was it his, the said Pankey's, wish to have a jury.

In what manner could it possibly have been material for Pankey to have stated whether he had or had not given such orders to the constable, or whether he, Pankey, had or had not wished to have had a jury. If the enquiry in the case of Pankey with Vineyard, was a legal one before a justice of the peace, having a right to try the controversy, then the legality of a constable's fees could in no way depend upon a request to the constable to summon a jury—because it is the justice of the peace who alone determines the issuing of the *venire*, which is the authority for the constable to summon a jury. Could then this enquiry be a material one for the consideration of the grand jury, to enable them to determine whether the constable had or had not been guilty of taking illegal fees? The legality or illegality must alone depend on the fact, whether the justice had or had not given the officer authority to summon a jury, and whether or not, such services had been rendered, and the fees charged and received. It is evident that the facts charged to have been sworn to before the grand jury, were in every particular, immaterial to the enquiry, had it been a proper subject of investigation before it; and although they may have been entirely false, still it could not have been the commission of legal perjury, because of its *immateriality*.

If the Court were to look into the bill of exceptions, in an examination of the correctness of the decision made on the motion to quash in the Circuit Court, which would be clearly improper, because that decision is to be alone tested by the posi-

tion of the cause as it then stood, it would then perceive that the case with Vineyard, was an arbitration about an alleged libel before a justice of the peace, who had not the slightest jurisdiction to examine into it; and that, consequently, the constable could have had no legal authority to summon a jury in the case, and might well, therefore, have been guilty of charging illegal fees, when the proceedings before the magistrate were wholly void.

As we are clearly of opinion that the Circuit Court erred in not quashing the indictment for the reasons stated, the judgment of the Circuit Court of Johnson county is reversed, and the prisoner is to be discharged.

· *Judgment reversed.*