## LINDER WILKINSON

### v.

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 21, 1907—Rehearing denied April 4, 1907.*

1. INDICTMENT—*highest degree of certainty is required in an indictment.* The highest degree of certainty is required in an indictment, and the fact that enough may be gathered from the whole indictment to sustain a conviction is not sufficient.

2. SAME—*essentials of indictment for perjury.* An indictment for perjury is fatally defective which does not show upon its face that the alleged false testimony was material to the issue, and a mere averment that it was material to the issues, generally, is not sufficient.

3. SAME—*an indictment for perjury should allege that the false testimony was corruptly given.* An indictment for perjury should allege that the false testimony was corruptly given, and it is not sufficient that it avers that the defendant "unlawfully, knowingly, willfully and feloniously testified," etc.

4. PERJURY—*evidence not tending to prove the issues under the indictment is incompetent.* In a perjury case for alleged false swearing in a criminal prosecution for conspiracy to extort money by bringing a damage suit against a street railway company, it is error to admit in evidence the record of the civil suit, and testimony relating to such suit, and conversations with the accused in no way tending to prove the falsity of his testimony in the conspiracy case, upon which the indictment is based.

5. SAME—*rule as to assigning perjury upon cross-examination.* Perjury may be assigned upon the cross-examination of a witness only where the testimony in chief is material to the issue and the cross-examination affects the credibility of the witness.

6. SAME—*when conviction for perjury cannot be sustained.* A conviction for perjury, based upon the cross-examination of the accused as a witness, cannot be sustained where there is no proof in the record from which it can be determined whether the cross-examination was in any way material, or even proper, in view of the testimony in chief.

7. SAME—*whether false testimony was material not a question of fact for the jury.* Whether alleged false testimony was material to the issues is a question of law or a mixed question of law and fact, and it is error for the instructions to leave that question to

the jury, especially where there is improper evidence in the record showing the testimony of the accused in another case than the one wherein the perjury is charged.

8. ATTORNEYS AT LAW—*it is not proper practice for an attorney to act as a witness in the case.* While not unlawful, it is not proper practice for an attorney connected with a case to appear as a witness, particularly where he first appears as attorney in a civil case, then as special counsel for the People in a criminal prosecution for conspiracy in bringing the civil suit, and finally as a witness and as of counsel for the People in a perjury prosecution based upon the conspiracy case.

CARTER, J., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

E. M. SEYMOUR, WILLIAM E. MASON, and JOHN F. GEETING, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (FRANK CROWE, and JOSEPH B. DAVID, of counsel,) for the People.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Plaintiff in error was convicted at the June term, 1905, of the criminal court of Cook county, of the crime of perjury and sentenced to the penitentiary. He has sued out this writ of error to reverse that judgment.

The indictment charges that at the December term, 1904, of the criminal court of Cook county, in the State of Illinois, before the Hon. Willard M. McEwen, lawfully holding said criminal court on the 20th day of December, 1904, and divers other days of said December term, a certain trial was then and there being had upon a certain indictment for conspiracy to obtain money by false pretenses and to cheat and defraud, in which said indictment the People of the State of Illinois were the plaintiffs and one Rose

Strang, William Strang, Linder Wilkinson and Elizabeth Hilderbrand were defendants, upon issue joined before a jury lawfully empaneled and sworn, the said Hon. Willard M. McEwen, aforesaid, judge presiding, said criminal court of Cook county having full authority, power and jurisdiction in the premises and being the tribunal properly and legally invested to hear and determine the issues aforesaid upon the indictment aforesaid, and thereupon then and there, on, to-wit, the 20th day of December, 1904, one Linder Wilkinson, being one of the defendants in said indictment, was then and there sworn as a witness in his own behalf, and thereupon then and there on, to-wit, the 20th day of December, 1904, the said Linder Wilkinson did unlawfully, feloniously, willfully, deliberately and corruptly testify falsely upon matters material to the issue upon the trial upon said indictment aforesaid, in substance as follows, to-wit:

"That he, said Linder Wilkinson, on the 22d day of April, A. D. 1904, did not have read to him in the office of William Elmore Foster, a lawyer, in the presence of one Joseph B. David and one Helen T. Neville, any affidavit, nor did the said Helen T. Neville read to him, the said Linder Wilkinson, from shorthand notes taken by said Helen T. Neville, the following: (Here follows a lengthy blank affidavit;) that no affidavit was dictated by Joseph B. David to Helen T. Neville in the presence of him, said Linder Wilkinson, and that no affidavit was read to him by Helen T. Neville on the 22d day of April, A. D. 1904, nor was anything read to him by said Helen T. Neville on the 22d day of April, A. D. 1904, and that nothing was dictated to said Helen T. Neville on the 22d day of April, A. D. 1904, in the presence of him, said Linder Wilkinson, by Joseph B. David which was to be transcribed in the form of an affidavit, and that he, said Linder Wilkinson, did not assent and say that that which was dictated by Joseph B. David to Helen T. Neville in said Linder Wilkinson's pres-

ence, after the same was read over to him, was true and correct; and he, said Linder Wilkinson, upon the trial of said indictment aforesaid, then and there further unlawfully, knowingly, willfully and feloniously testified falsely on a matter material to the issues aforesaid, in substance, that on the 22d day of April, A. D. 1904, at the office of the Lake Street Elevated Railroad Company, one Joseph B. David offered to him, said Linder Wilkinson, the sum of $200 if he, the said Linder Wilkinson, would make an affidavit in the case of Strang *vs.* Lake Street Elevated Railroad Company, and that the said Joseph B. David stated to him, said Linder Wilkinson, that if he, said Linder Wilkinson, did not sign such affidavit, he, the said Linder Wilkinson, would go to the penitentiary, (but fails to state the nature of the affidavit;) that he, said Linder Wilkinson, never had any conversation over the telephone with one L. L. Austin or with one William A. Shapaker; that he, said Linder Wilkinson, never asked said L. L. Austin or said William A. Shapaker for any money to make an affidavit in the case of Strang *vs.* Lake Street Elevated Railroad Company; that on, to-wit, the 11th day of April, A. D. 1904, he, the said Linder Wilkinson, in the office of William Elmore Foster, said, in the presence of one William S. Carpenter, that he would not sign an affidavit or statement that had been read to him, said Linder Wilkinson, by said William S. Carpenter, because the same was not true; whereas, in truth and in fact, there was read to the said Linder Wilkinson, in the office of William Elmore Foster, on the 22d day of April, A. D. 1904, in the presence of one Joseph B. David and one Helen T. Neville, an affidavit, and the said Helen T. Neville did read from shorthand notes taken by her, the following: (Then follows the same blank affidavit.) And whereas, in truth and in fact, an affidavit was dictated by Joseph B. David to Helen T. Neville in the presence of him, said Linder Wilkinson," etc.

The indictment further avers that in truth and in fact Joseph B. David did not offer defendant $200 if he would make an affidavit in the Strang case, and did not say to him if he did not sign such affidavit he would go to the penitentiary; that the defendant did have a conversation over the telephone with one William A. Shapaker, and did ask one· L. L. Austin for money for making an affidavit in the case of Strang *vs.* Lake Street Elevated Railroad Company, and did ask one William A. Shapaker for money for making an affidavit in the case of Strang *vs.* Lake Street Elevated Railroad Company, and did not, on the 11th day of April, A. D. 1904, in the presence of one William S. Carpenter and in the office of William Elmore Foster, say that he would not sign an affidavit which had been read to him by said William S. Carpenter because the same was not true; all of which matters and facts thus testified to by the said Linder Wilkinson as a witness in his own behalf he knew to be false, etc.

The remaining part of the indictment is but a repetition of the facts stated above, with the conclusion that the indictment in the conspiracy case was dismissed as to the defendant William Strang and the trial proceeded against the other defendants, and finally, that "the grand jurors aforesaid, upon their oaths aforesaid, do say that by means of the premises, he, the said Linder Wilkinson, did then and there and thereby willfully, corruptly, unlawfully, feloniously and knowingly commit and is guilty of the offense of perjury, contrary to the statutes and against the peace and dignity of the same people of the State of Illinois."

A motion was made to quash the indictment by counsel for the defendant, but the motion was overruled, and that ruling is assigned as error in this court.

The indictment, as will be seen from the foregoing statement, is an anomaly in criminal pleading. Counsel for the People say that it is an indictment of one count with several assignments of perjury. We think it is fatally defective in not showing, upon its face, that the alleged false testi-

mony was material to the issue. This defect is attempted to be cured by what is called a general averment of materiality. The pleader, it is true, is not required to set out minutely in the indictment the materiality of the alleged false testimony. The rule, however, in that regard is thus stated in Russell on Crimes (vol. 2) : "It is necessary that it should appear on the face of the indictment that the oath taken was material to the question depending, but it is not necessary to set forth in the indictment so much of the proceeding of the former trial as will show the materiality of the question on which the perjury is assigned, and it will be sufficient to allege generally *that the particular question became a material question."* (The italics are the writer's.) All the precedents to which our attention has been called in a case like this, aver that it became a material matter whether the defendant made the false statements assigned for perjury in the indictment. We do not regard the averment that the testimony was material to the issue, generally, as sufficient. Moreover, the so-called second assignment of perjury, and each of those following, as shown above, is, that he, Linder Wilkinson, upon the trial of said indictment aforesaid, then and there further unlawfully, knowingly, willfully and feloniously testified on a matter material to the issue aforesaid, *in substance,* etc. There is no averment here that the testimony was corruptly given, which is always necessary in an indictment for perjury. Neither is it sufficient to state the substance of the alleged false testimony. It may be contended that the subsequent averments are sufficient to show that the testimony was corruptly sworn to, but we do not think it can be successfully so contended. As to each of the alleged assignments of perjury after the first we are of opinion that the indictment should have been quashed, and we think the first was also bad for uncertainty and for lack of a proper allegation of the materiality of the particular question raised by the assignments of perjury. The most that can be said in support of the sufficiency of

the indictment is, that enough can be gathered from the whole indictment to sustain the conviction. In an indictment that is not sufficient, as it might be in a bill in chancery or a declaration. In criminal pleading the highest degree of certainty is always required. The motion to quash should have been sustained.

We think the judgment below must be reversed for other substantial errors committed upon the trial. It will be seen that the several claimed assignments of perjury are, that the defendant falsely swore that on the 22d day of April, 1904, he "did not have read to him in the office of William Elmore Foster, a lawyer, in the presence of one Joseph B. David and one Helen T. Neville, any affidavit, nor did said Helen T. Neville read to him, the said Linder Wilkinson, from shorthand notes taken by said Helen T. Neville, the following." Then follows the so-called affidavit, purporting to have been prepared with a view to the defendant subscribing and making oath to the same. That affidavit is set out in full three times in the indictment. It purports to state what the defendant had testified to as a witness in the case of Strang *vs.* Lake Street Elevated Railroad Company; how he came to appear as a witness in that suit; that his testimony was in some respects untrue, and so on. The second assignment of perjury is, that he swore falsely that Joseph B. David offered him $200 if he would make an affidavit in the case of Strang *vs.* Lake Street Elevated Railroad Company, and that said David told him if he did not sign such affidavit, he, the defendant, would go to the penitentiary. The third is, that he swore falsely that he never had any conversation over the telephone with one L. L. Austin or with one William A. Shapaker, and never asked said L. L. Austin or said Shapaker for any money to make an affidavit in Strang *vs.* Lake Street Elevated Railroad Company. And the fourth is, that he falsely swore that he said in the office of William Elmore Foster, in the presence of William S. Carpenter, that he would not sign

an affidavit or statement that had been read to him by said Carpenter because the same was not true. These allegations presented simple issues of fact capable of being determined by testimony within a very small compass, but the evidence seems to have been unlimited.

It appears that an action on the case had been brought by one Rose Strang against the Lake Street Elevated Railroad Company for personal injuries, in which the defendant and others testified on behalf of the plaintiff. The suit resulted in a verdict in favor of the plaintiff. William Elmore Foster and Joseph B. David, who were attorneys for the railroad company, were engaged with one L. L. Austin, a claim agent, and Thomas McGuire, a detective, in endeavoring to obtain affidavits in support of a motion for a new trial, and claiming to have learned from the defendant that his testimony in the case was not true, after some preliminary conversations a meeting was arranged for the 22d of April, 1904, in the office of Foster, at which Foster, McGuire, David, Miss Neville, (a stenographer,) and the defendant were present. Conversations then took place as to the testimony given by Wilkinson upon the trial of the personal injury case, at which time it is claimed the writing set up in the indictment as an affidavit was read to the defendant. The defendant, together with Rose Strang and others, was subsequently indicted in the criminal court of Cook county for having conspired to extort money from the said elevated railroad company, upon the trial of which it is charged the defendant committed the perjury attempted to be assigned.

As above stated, Joseph B. David was one of the attorneys for the elevated railroad company in the personal injury case and testified on behalf of the People in this case. He swears he was also special counsel for the People in the trial of the conspiracy case, and appears prominently in the argument of this case. On the trial below, having first stated that a meeting was held on April 22 at the Lake

Street Elevated Railroad Company office, at which he, Mc-
Guire, Miss Neville and the defendant were present, he was
asked by the assistant prosecuting attorney this question:
"Tell everything that took place in your presence and in the
presence of the defendant, Wilkinson, and McGuire,—that
took·place specially in Wilkinson's presence." Counsel for
the defendant objected, but the objection was overruled and
the witness· was permitted to detail conversations between
himself and McGuire as to what the defendant was willing
to swear to, what McGuire said to the defendant, what he
(the witness) said to the defendant and what the defendant
said to him, much of which was wholly irrelevant to the is-
sue being tried and calculated to prejudice the jury against
the defendant. His testimony relates largely to the per-
sonal injury case, and to conversations with the defendant
in no way tending to prove the falsity of the testimony of
the defendant as alleged in the indictment. He was further
asked if he made an affidavit in support of the motion for
a new trial before Judge Heard in the personal injury case,
and allowed to answer he did, and that affidavit was intro-
duced before the jury.

The prosecution also offered the entire proceedings in
the case of Strang *vs.* Lake Street Elevated Railroad Com-
pany, to which defendant's counsel objected, but the objec-
tion was overruled and the record introduced in evidence,
with the entire testimony of the defendant on that trial.
This was clearly prejudicial error, and while the court sub-
sequently instructed the jury that the defendant was not on
trial for any testimony given by him before Judge Heard
on the trial of the civil suit of Strang *vs.* Lake Street Ele-
vated Railroad Company, all of the evidence relating there-
to was permitted to go to the jury without any instruction
limiting it or directing the jury to disregard it. The ques-
tion for trial was, as we have said, simply whether the de-
fendant swore to the facts alleged in the indictment, whether
his testimony as to those facts was willfully and corruptly

false, and particularly whether that testimony was material to the issue, and all the testimony objected to which did not tend directly or indirectly to prove these facts was incompetent and should have been excluded.

The only evidence introduced below to prove that the defendant did swear, on the trial of the conspiracy case, to the facts set up in the indictment, was that of a court reporter reading from shorthand notes of the cross-examination of the defendant. It was objected by the defendant's counsel that if his cross-examination was admitted in evidence his entire testimony should be introduced; but that objection was overruled and the State allowed to prove by the shorthand notes what he said in answer to questions upon his cross-examination alone. Many of the answers were drawn out by leading and suggestive questions. It cannot be read without reaching the conclusion that the entire cross-examination was conducted with a view to having the witness deny the facts alleged in the indictment rather than to elicit the truth. We also think, when considered as a whole, it fails to prove with that degree of certainty required in criminal cases that the defendant did positively swear to the fact charged. He was asked, "How much money did Foster offer you?" assuming that money had been offered to him by Foster, of which there was no charge, or, so far as shown, any evidence. He answered: "Foster did not offer it to me; you [David] are the one that offered it.

Q. "Did I say I would give you $200?

A. "No, sir; you said the road would give me a check.

Q. "I said I would give you $200?

A. "You said we would not talk money in the presence of these people."

This testimony, considered as a whole, falls far short of proving that the defendant swore that Joseph B. David offered him $200 if he would make an affidavit in the Strang case at the office of Foster. And so as to the other alleged facts. While single questions and answers may seem to

show that he so testified, yet when his entire evidence is considered it cannot be said, beyond a reasonable doubt, that he intended to be so understood.

But if it should be admitted that the proof does show that he swore, on that cross-examination, that in the office of William Elmore Foster, in the presence of Joseph B. David and Helen T. Neville, no affidavit was read to him, and that Helen T. Neville did not read to him, from shorthand notes taken by her, the purported affidavit, or that Joseph B. David did offer him $200 if he would make an affidavit in the case of Strang *vs.* Lake Street Elevated Railroad Company, and that said David told him if he did not sign an affidavit he, the defendant, would go to the penitentiary, or that he never had any conversation over the telephone with one L. L. Austin or with one William A. Shapaker, and never asked either of them for money to make an affidavit in the Strang case, or that he said in the office of William Elmore Foster, in the presence of William S. Carpenter, that he would not sign an affidavit or statement that had been read to him by said Carpenter because the same was not true, the question remains, how is it shown that such testimony was material? It is well understood that in every prosecution for perjury it is essential that the alleged false testimony must have been material to the issue upon trial. While it has been held that perjury may be assigned on the cross-examination of a witness, that holding is upon the theory that where the testimony in chief is material to the issue and the cross-examination affects the credibility of the witness the cross-examination becomes material. As in this case, if the defendant testified in his own behalf or in behalf of his co-defendants in the conspiracy case in chief contrary to the facts set up in the indictment, then his cross-examination might tend to prove that he had made statements out of court contradictory of his sworn evidence, and the cross-examination would go to his credibility and in that way become material. But there is

226—10

nothing in the evidence in this record from which it can be determined that the cross-examination was in any way material, or even proper, in view of the testimony in chief. How could the court below say, and how can we see, that the cross-examination in any way tended to discredit or impeach the witness? No one will seriously contend that the defendant's swearing to the alleged facts set up in the indictment would have the slightest bearing upon the question whether a conspiracy had been formed to extort money from the Lake Street Elevated Railroad Company. How could the fact that an affidavit was read to him, etc., of itself tend to prove that such a conspiracy had been entered into? The question is not whether the cross-examination was admissible without the testimony in chief, as objected to by counsel for the defendant, but rather whether the prosecution proved enough of the direct testimony to show that the cross-examination became material as tending to impeach or contradict the witness.

In *Young* v. *People,* 134 Ill. 37, we quoted with approval the language in Starkie on Evidence (vol. 3, p. 1142,) in which the author says: "If the assignment be in evidence on the trial of a cause, in addition to the production of the record the previous evidence and state of the cause should be proved, or at least so much of it as shows that the matter sworn to was material." And, after citing to the same effect Russell on Crimes, (vol. 2, p. 662,) we said (p. 41): "Here the alleged deed was claimed to be a link in French's chain of title. If it was, it would be material evidence. It was therefore necessary for the People to show what the chain of title was in order to establish that the alleged deed was material. * * * We do not think, as has been suggested, that the action of ejectment should be tried over again in ascertaining the guilt or innocence of the defendant, but enough of the deeds read in evidence on that trial should have been produced to show that the deed in question was material." And so here, without any proof

whatever tending to show how or in what manner the alleged false testimony became then and there material to the issue on trial in the case in which it is alleged the perjury was committed, it is clear that the conviction cannot be sustained.

In addition to this, many of the instructions given on behalf of the People were manifestly erroneous. It is well settled that the question, upon the trial of a case for perjury, whether the alleged false testimony was material to the issue is one of law and not of fact, or, as is sometimes said, is a mixed question of law and fact. As stated in Bishop on Criminal Procedure (vol. 2, 935) : "The course is to introduce evidence from which the court can see that the testimony was material; then, assuming this evidence to be true, the question of materiality becomes one of law for the court,—not of fact for the jury. Practically, however, the reader perceives the whole subject is to be passed upon by the jury, under instructions from the judge, as involving, like most other cases, mixed questions of law and fact." And instructions which submitted to the jury the question as to whether testimony was material in the trial of a case were condemned and their admission held to be reversible error in *Young* v. *People, supra.* The fifth instruction given at the instance of the People told the jury "that if the People show, from the evidence, beyond a reasonable doubt, the following: First, that there was a trial before Judge McEwen and a jury, as charged in the indictment, on which trial the defendant was sworn and testified as a witness, as charged in the indictment; second, that the defendant testified falsely before Judge McEwen, as charged in the indictment, *on matters material to the issue;* third, that such testimony given by said defendant was willfully, corruptly and knowingly given, * * * as charged in the indictment, then you should find the defendant guilty." Here the materiality of the testimony is submitted to the jury purely as a question of fact. The seventh instruction is so confused

by referring to the testimony of the defendant in the trial of the case of Strang *vs.* Lake Street Elevated Railroad Company, before Judge Heard, on a certain matter for the purpose of tending to prove said alleged overt act of said Wilkinson, etc., that it could have had no influence upon the minds of the jury other than to confuse and mislead them. The eighth, after stating what is immaterial as relating to the case of Strang against the railroad company, concludes: "If the People prove any of the alleged assignments of perjury in manner and form as charged in the indictment and beyond a reasonable doubt, then the defendant should be found guilty, irrespective of whether Mrs. Strang was injured on the Lake Street Elevated Railroad Company, or whether the defendant was or was not a guard on the train and witnessed or did not witness such alleged accident to Mrs. Strang, or whether Mrs. Strang recovered a verdict for damages against the said company, and whether said verdict was set aside." This instruction ignores entirely the materiality of the testimony. But the ninth, after reciting that the result of the case of Strang *vs.* Lake Street Elevated Railroad Company was immaterial, (although, as we have seen, the entire record in that proceeding was admitted in evidence,) concludes as follows: "The question for your determination is, did the defendant, on the trial before Judge McEwen, testify as a witness in his own behalf, as charged in the indictment, and did he falsely testify *to the matters material to the issue on said trial,* as charged in the indictment in this case. * * * If the evidence on this trial shows, beyond a reasonable doubt, that the defendant testified before Judge McEwen as to any of the alleged assignments of perjury charged in the indictment, and such testimony as given by him was false, and was knowingly, willfully, corruptly and falsely given by said defendant, Wilkinson, as charged in the indictment, *and was material to the issues on the trial* before Judge McEwen, you will find the defendant guilty." And the eighteenth is in

this language: "The jury are further instructed by the court that the indictment contains one count, in which several assignments of alleged perjury are charged. In order to find a verdict of guilty it is not necessary that the People prove all of said assignments of alleged perjury. It is sufficient if the evidence shows, beyond a reasonable doubt, that the defendant, on the trial before Judge McEwen, testified knowingly, willfully, corruptly and falsely to any of the alleged false testimony, as charged in the indictment, *and that such testimony was material to the issues on the trial before Judge McEwen,* and was false, and known to be false, when testified to by the defendant, if the evidence shows he did so testify and the same is set forth in the indictment."

With the volume of evidence before it as to the connection of the defendant with the Strang case, the prosecution for conspiracy and the unrestricted testimony of witnesses as to conversations with him irrelevant and impertinent to the issue on trial, it is not strange that the jury, thus left to determine for themselves, as a matter of fact, whether the alleged false testimony was material or not, should have found the defendant guilty.

It is insisted that the judgment below should be reversed because one of the attorneys who appears as counsel for the People and argued the case orally in this court was a leading and material witness on behalf of the prosecution in the court below. In justification of his conduct it is insisted that there is no law in this State, statutory or otherwise, forbidding an attorney to be a witness and at the same time an attorney in a case. Doubtless that is true; but courts have generally condemned the practice as one which should be discountenanced and of doubtful professional propriety. We said, speaking by Justice Breese, in *Morgan* v. *Roberts,* 38 Ill. 65, on page 85: "We are not advised that it is contrary to any statute or to any maxim of the common law to make the attorney in a cause a witness in the cause he is managing. This is a matter which appeals to the profes-

sional pride of an attorney and his sense of his true position and duty. In the English courts, in several cases, it was held that an attorney cannot appear in the same cause in the double capacity of witness and advocate, and it has been so ruled in Pennsylvania and in Iowa, on the circuit. In Indiana it was held by Judge McDonald, now United States district judge, that an attorney in a cause could not be permitted to testify to the general merits of the case. In *Frear* v. *Drinker*, 8 Pa. St. Rep. 521, the court said that it was a highly indecent practice for an attorney to cross-examine witnesses, address the jury and give evidence himself to contradict the witness; that it was a practice to be discountenanced by court and counsel; that it was sometimes indispensable that an attorney, to prevent injustice, should give evidence for his client. It, however, leads to abuse. But at the same time, there was no law to prevent it. All the court can do is to discountenance the practice, and, when the evidence is indispensable, to recommend to the counsel to withdraw from the cause. This subject has engaged the attention of other courts and of this court, and however indecent it may be in practice for an attorney retained in a case and managing it, to be a witness also, we cannot say he is incompetent, and must leave him to his own convictions of what is right and proper under such circumstances."

And again, in *Ross* v. *Demoss*, 45 Ill. 447, Justice Lawrence said: "On the trial below the evidence was conflicting, but it seems to preponderate in favor of the decree. The weight of the evidence of Garner is somewhat impaired from the fact that he was proved to have been one of the attorneys in the case, and had a conditional fee, dependent on the result of the suit. It is of doubtful professional propriety for an attorney to become a witness for his client without first entirely withdrawing from any further connection with the case, and an attorney occupying the attitude of both witness and attorney for his client subjects his testimony to criticism, if not suspicion; but where the half of a valuable

farm depends upon his evidence he places himself in an unprofessional position and must not be surprised if his evidence is impaired. While the profession is an honorable one, its members should not forget that even they may so act as to lose public confidence and general respect."

The foregoing language of eminent judges of this court was used in civil cases and is peculiarly applicable to this case, in which the People are generally supposed to be represented by public officers. Here the witness first appeared as an attorney for the Lake Street Elevated Railroad Company in the personal injury case, and was prominent in procuring affidavits in support of the motion for a new trial, and one of which he attempted to obtain from the defendant, Wilkinson. He next appeared, he says, as special counsel for the People in the prosecution of the conspiracy case, and while he may not have actively appeared in the prosecution of this case on the trial below, it is quite apparent that he had more or less to do with shaping the course of the prosecution, and voluntarily, as we have already said, appeared as a prominent witness in the case. There is substantial ground for the inference that he regarded the litigation throughout as between the elevated railroad company and the defendant or defendants, rather than as by the People for the enforcement of public rights. The fact that he does appear in this record in the unenviable attitude of a willing witness and a zealous attorney should not, perhaps, work a reversal of the judgment below if the record were in all other respects free from error, but we cannot overlook such professional impropriety when our attention is called to it.

Other grounds of reversal urged have received consideration, but we think they are without substantial merit.

For the errors indicated the judgment below will be reversed.                              *Judgment reversed.*

Mr. JUSTICE CARTER, dissenting.