*(Criminal Court of Cook County.)*

## People of the State of Illinois

### vs.

### Gustave Myers.

(July 11, 1908.)

1. PERJURY—INDICTMENT—ALLEGING SUBSTANCE OF FALSE TESTIMONY. In an indictment for perjury it is insufficient to set out the *substance* of the alleged false testimony.
2. INDICTMENT—CERTAINTY OF. In criminal pleading the highest degree of certainty is always required.
3. PERJURY—INDICTMENT BASED ON FALSE STATEMENT OF WITNESS TO EFFECT THAT HE DID NOT REMEMBER. An indictment for perjury can be predicated upon the false statement of a witness that he did not remember a certain fact. The difficulty lies only in the making of the proof.
4. SAME—SUFFICIENCY OF INDICTMENT AS TO MATERIALITY OF TESTIMONY. An indictment for perjury must allege that the alleged false testimony was material to the issue or point in question. It is insufficient to merely allege that it was material.
5. SAME—MATERIALITY OF TESTIMONY AS TO EFFECT PRODUCED BY LIBEL. A witness may testify as to the impression produced upon him by a libel and such testimony is material.
6. SAME—MATERIALITY OF IMPROPER CROSS EXAMINATION. Where a witness is cross-examined with respect to matters not germane to the direct testimony, perjury cannot be assigned on such cross examination.

Motion to quash indictment for perjury. No. 87,430.

STATEMENT OF FACTS.

The defendant was indicted for perjury, alleged to have been committed in a libel suit. The indictment consisted of three counts. Count I alleged:

That heretofore, to-wit, on the second day of March, in the year of our Lord, one thousand nine hundred and eight, at Chicago * * * in the municipal court of Chicago, in the said county of Cook, the Honorable William N. Cottrell, judge of said municipal court of Chicago, presiding in a certain judicial proceeding, to-wit, a certain issue between one Robert D. Lay and Gustave Myers, late of * * * in a certain plea of trespass on the case, wherein the said Robert D. Lay was plaintiff and the said Gustave Myers was defendant, to-wit, a certain suit for alleged damages to the amount of $1,000 and no more, resulting from the alleged composition and publication by the said Gustave Myers of and concerning the said Robert D. Lay, in a certain printed pamphlet, which said pamphlet was then and there introduced and received in evidence as an exhibit, to-wit, plaintiff's Exhibit B, on the trial of said cause, on behalf of the said Robert D. Lay, a certain alleged false, scandalous, malicious and defamatory libel, came on to be tried in due form of law, and was then and there in the city of Chicago in the county of Cook aforesaid duly tried before the said William N. Cottrell, judge of said municipal court of Chicago so presiding as foresaid, upon which said trial the said Gustave Myers then and there appeared as a witness for and on his own behalf, to-wit, on behalf of the said Gustave Myers, defendant in the plea aforesaid, and was then and there duly sworn in due form of law by Harry S. Holmberg, deputy clerk of the said municipal court of Chicago, that the evidence which he, the said Gustave Myers should give to the court there touching the matters then in question between the said parties, should be the truth, the whole truth and nothing but the truth, he, the said Harry S. Holmberg, deputy clerk as aforesaid, then and there had full power and authority to administer said oath to the said Gustave Myers in that behalf, and the said

municipal court of Chicago so presided over by the said William N. Cottrell, judge as aforesaid, then and there had jurisdiction to the amount of $1,000 of the parties to and the subject-matter of said cause to the amount of $1,000.

And the jurors first aforesaid, upon their oaths further present that at and upon the trial of said issue so joined between the said parties as aforesaid, it then and there became and was a material question whether he, the said Gustave Myers, was the author of said alleged libel contained in said pamphlet introduced and received in evidence on behalf of the plaintiff in said cause as plaintiff's Exhibit B, as aforesaid; and whether or not he, the said Gustave Myers, had at any time theretofore received copies of said alleged libel.

And the jurors first aforesaid, upon their oaths aforesaid, do further present, that the said Gustave Myers, being so sworn as aforesaid, not regarding the laws of this state, but contriving and intending to prevent the due course of law and justice, and unjustly to aggrieve the said Robert D. Lay, the plaintiff in the said issue, and to deprive him of the benefit of his suit then in question, and to subject him then and there on the trial of said issue to sundry heavy costs and expenses, upon his oath aforesaid, falsely, feloniously, corruptly, wilfully, knowingly and maliciously, before the said William N. Cottrell, judge as aforesaid, did then and there, to-wit, on the 5th day of March, in the year of our Lord, one thousand nine hundred and eight, depose and swear, among other things, in substance as follows:

"I am not the author of that paragraph" (meaning and intending thereby to say that he, the said Gustave Myers, was not the author of said alleged libel contained in said pamphlet introduced and received in evidence on the trial of said cause as plaintiff's Exhibit B, as aforesaid). "I never have received the copies that you speak of. I never have received them" (meaning and intending thereby to say that he, the said Gustave Myers, had never at any time theretofore received any printed, written or other copies of said alleged libel contained in said pamphlet introduced and re-

ceived in evidence on the trial of said cause as plaintiff's Exhibit B, as aforesaid), which testimony was false, etc.

Count II alleged that the defendant deposed "in substance" that he "did not remember where he  *  *  *  had first seen the said pamphlet introduced and received in evidence on the trial of said cause as plaintiff's Exhibit B, as aforesaid;  *  *  *  that he,  *  *  *  did not then and there remember whether or not he,  *  *  *  had caused said alleged libel contained in said pamphlet introduced and received in evidence on the trial of said cause as plaintiff's Exhibit B, as aforesaid, to be printed by the Hill Printing Company in Toledo, Ohio, in the month of October, in the year of our Lord, one thousand nine hundred and seven;  *  *  *  that he,  *  *  *  did not then and there remember how many times he,  *  *  *  had before then met one John N. Hill, the person who had printed or caused to be printed said alleged libel contained in said pamphlet introduced and received in evidence in said cause as plaintiff's Exhibit B, as aforesaid;  *  *  *  that he,  *  *  *  did not then and there remember whether or not he,  *  *  *  had met said John N. Hill in Toledo, Ohio;  *  *  *  that he  *  *  *  did not then and there remember whether or not he  *  *  *  had delivered to said John N. Hill at his place of business in the city of Toledo in October, in the year of our Lord, one thousand nine hundred and seven, or at any other time, a manuscript of said alleged libel contained in said pamphlet introduced and received in evidence on the trial of said cause, as plaintiff's Exhibit B, as aforesaid, or which contained in substance the same alleged libel aforesaid;  *  *  *  that he  *  *  *  did not then and there remember whether or not he,  *  *  *  had paid to John N. Hill any money for printing the said alleged libel contained in said pamphlet introduced and received in evidence as plaintiff's Exhibit B, as aforesaid;  *  *  *  that he,  *  *  *  did not then and there remember whether or not he,  *  *  *  had ever before then seen a certain printer's proof of said printed pamphlet containing said alleged libel, which said

printer's proof had on the trial of said cause been introduced and received in evidence on the part of the said plaintiff as an exhibit, to-wit, plaintiff's Exhibit E;  *  *  * that he  *  *  * did not then and there remember whether or not he  *  *  * had seen said printer's proof introduced and received in evidence on the trial of said cause as plaintiff's Exhibit E, as aforesaid, in the place of business of the said Hill Printing Company, in October, in the year of our Lord, one thousand nine hundred and seven, in the city of Toledo, Ohio;  *  *  * that he  *  *  * then and there could not say whether or not certain writings, to-wit, the words 'recognize the district of Columbia,' then and there appearing upon said printer's proof, to-wit, said Exhibit E, were in the handwriting of him, the said Gustave Myers,'' which testimony was false, etc.

Count III alleged that in a certain action at law the said defendant ''was charged by the said Robert D. Lay, in substance, with having theretofore maliciously written, published and circulated a certain alleged libelous statement of and concerning the said Robert D. Lay in a certain printed pamphlet entitled 'The Crime of a Life Insurance Company,' and which said alleged libelous statement was and is in words and figures as follows, to-wit: 'Robert D. Lay, the secretary of the company, is a young man and is said to be a relative of Mr. E. A. Shedd, one of the principal owners of this company.   According to the National Life's sworn statement to the insurance department of the state of Minnesota, Mr. Lay's salary is given as $4,000 per annum.   Still, it is reported that when asked by a friend a short time ago what his salary was, he replied that he was making $12,000 a year OUT OF IT; ' and in and by which alleged libelous statement the said Robert D. Lay in said cause further alleged and contended, in substance, that the said Gustave Myers falsely and maliciously intended and meant to and did state and charge that the said Robert D. Lay had theretofore stated and admitted, and that the fact was, that he, the said Robert D. Lay, had surreptitiously and unlawfully, while

31

acting as the secretary of a certain life insurance company, to-wit, the National Life Insurance Company of the United States of America, appropriated from the funds of said company $8,000 in excess of his salary per annum.''

That the said defendant was called as a witness in his own behalf and testified as follows:

"Q. Are you acquainted with A. M. Andrews?

"A. Yes, sir.

"Q. How long have you known him?

"A. Three years.

"Q. I will ask you to state whether at any time Andrews had a conversation with you in which the salary, earnings or income of Robert D. Lay, the secretary of the National Life Insurance Company, was under discussion? Answer yes or no.

"A. Yes.

"Q. When was that; about?

"A. It was shortly after I resigned from the National Life.

"Q. We don't know when you resigned from the National Life; tell us about the month.

"A. It must have been either the latter part of 1906 or the early part of 1907.

"Q. The latter part of 1906 or the early part of 1907?

"A. I think so, yes, sir.

"Q. That is as close as you can fix the time?

"A. For the present.

"Q. Where did this conversation take place?

"A. At his office.

"Q. Where was his office?

"A. In the Woman's Temple building.

"Q. Who were present at this meeting?

"A. Just he and me.

"Q. You and him?

"A. Yes, sir.

"Q. Now, what, if anything, did Andrews say to you, in regard to the salary of Robert D. Lay?

"A. He said, 'Gus, what is Lay's salary?' and I told him that I understood it to be $4,000 a year.

"Q. Well, what did he say? Go on.

"A. I can't state what he said.

"Q. Well, if you can't state, then step off; don't you know?

"A. Well, excepting it is vile what he said in connection with the exact statement.

"Q. Will you please say what he said, or say that you don't want to say it, or do whatever you please about it?

"A. Why, he said, he told me 'I asked him some time ago what he was getting and he told me he was making $12,000 a year out of it.'

"Q. Is that all the conversation that you remember?

"A. No.

"Q. Well, tell us something more; go on.

"A. He said to me 'Myers was usually serious,'—will you please read the question again?

"Q. Tell us what he said to you in regard to Lay's salary. Have you stated it all?

"A. Yes, as far as the salary is concerned, about all, yes.

"Q. Very well; that is all I wanted to know. Mr. Myers, I will ask you to look at the passage in the pamphlet marked Plaintiff's Exhibit B, at the bottom of page 21. Have you seen it before?

"A. Yes.

"Q. Did you read it?

"A. Yes.

"Q. State to the court what impression the reading of it made upon you as to whether it was intended to charge Robert D. Lay with surreptitiously and unlawfully appropriating from the funds of the company $8,000 in excess of his salary?

"A. It made no such impression.

"Q. State whether or not, in your opinion, the language is or is not compatible with perfect honesty on the part of Lay.

"A. Yes.

"Q. Have you read the whole of the pamphlet?

"A. Yes."

That on cross-examination the defendant testified that he ''did not then and there remember where he had first seen the said pamphlet containing the alleged libelous paragraph aforesaid, and the said Gustave Myers, having taken said lawful oath as aforesaid, did further unlawfully, wilfully, corruptly, falsely, knowingly and feloniously then and there depose, swear and testify in substance, among other things, that he, the said Gustave Myers, did not then and there remember whether or not he had caused the alleged libelous paragraph aforesaid to be printed, and that he did not then and there remember whether or not he had caused the alleged libelous paragraph to be printed by the Hill Printing Company in Toledo, Ohio, in the month of October, in the year of our Lord one thousand nine hundred and seven; * * * that he * * * had never received any copies of said printed paragraph aforesaid; * * * that he * * * did not then and there remember when and where or how many times he had then before met one John N. Hill, who had then before, to-wit, in October, in the year of our Lord one thousand nine hundred and seven, printed said alleged libelous paragraph, and that he did not then and there know whether or not he * * * had met the said John N. Hill in Toledo, Ohio; * * * that he * * * did not then and there remember whether or not he had delivered to John N. Hill, at the place of business of the said John N. Hill in Toledo, in October, in the year of our Lord, one thousand nine hundred and seven, or at any other time, a manuscript of the particular paragraph that he * * * had theretofore in his direct examination as aforesaid interpreted; * * * that he did not then and there remember whether or not he had paid to the said John N. Hill any money for printing the particular paragraph that he * * * had in his direct examination aforesaid interpreted; * * * that he * * * had not, to his recollection, ever before seen and that he did not then and there remember whether or not he had seen in the city of Toledo, Ohio, in the place of business of the Hill Printing Company, in October, in the year

of our Lord, one thousand nine hundred and seven, a certain printer's proof of the said printed pamphlet containing the said alleged libelous paragraph as aforesaid, which printer's proof had in the trial of said cause been introduced in evidence by the plaintiff, and then and there marked Exhibit E, and which said Exhibited E was then and there exhibited to the said Gustave Myers; * * * that he * * * did not then and there think he could say whether or not certain written words appearing upon said printer's proof, Exhibit E aforesaid, were in his handwriting; that he, * * * could not then and there say whether or not the words 'recognize the District of Columbia,' appearing upon said exhibit, were in his own handwriting; that he * * * could not then and there say whether or not the words 'in the form of dividends,' appearing upon said printer's proof, Exhibit E as aforesaid, were in his own handwriting; that he * * * did not then and there know in whose handwriting the words 'look for lead line,' appearing upon said printer's proof, Exhibit E as aforesaid, were; " which testimony was false, etc.

A motion to quash the indictment was made and argued before Judge Thomas G. Windes.

*John J. Healy,* state's attorney, for the People.

*Benjamin D. Magruder, George King, Harry Fisher* and *John F. Geeting,* for defendants.

POINTS FOR DEFENDANT.

I.

The indictment does not show that the municipal court had jurisdiction over the subject-matter of the libel suit. *Kizer v. People,* 211 Ill. 407; *Maynard v. People,* 135 Ill. 425; 2 Bishop's New Criminal Procedure (4th ed.), sec. 910a; *Pankey v. People,* 2 Ill. 80; 22 Ency. of Law (2d ed.) p. 683; *Johnson v. State,* 58 Ga. 397; *United States v. Jackson,* 20 D. C. 424; *Renew v. State,* 4 S. E. 19; *Elkin v. People,* 28 N. Y. 177; *Franklin v. State,* 91 Ga. 712; *State v. Furlong,*

26 Me. 69; *State v. Plummer,* 50 Me. 217; *People v. Howard,* 111 Cal. 655; *United States v. Wilcox,* Fed. Cas. 16,692; *State v. Jenkins,* 1 S. E. 437.

## II.

It is insufficient to set out the alleged false testimony in substance only. *Wilkinson v. People,* 226 Ill. 135; *Coppack v. State,* 36 Ind. 513; *State v. Blackstone,* 74 Ind. 592.

## III.

The deputy clerk of the municipal court has no authority to administer the oath in his own name. He acts as deputy only for and in his principal's name. Secs. 14 and 15, Municipal Court Act; sec. 1, ch. 101, Rev. Stats. of Ill.; *United States v. Hall,* 21 Pac. 85; *Wimbish v. Woolford,* 33 Tex. 110; *Talbott's Devisees v. Hooser,* 75 Ky. 408; *Schott v. Youree,* 142 Ill. 233; 13 Cyc. 1043; 9 Ency. of Law, p. 381; *Village of Auburn v. Goodwin,* 128 Ill. 57; *Norton v. Colt,* 2 Wend. 250; *Glencoe v. Edwards,* 78 Ill. 382; *Ditch v. Edwards,* 2 Ill. 127; *Ryan v. Eads,* 1 Ill. 217; Vol. 3, "Words and Phrases," pp. 2208 *et seq.*

## IV.

The testimony set forth in count III is immaterial. The cross-examination has reference to matters entirely foreign to the direct examination. Perjury cannot be assigned on cross-examination unless the original testimony is material and the cross-examination affects the credibility of the witness. *Kizer v. People,* 211 Ill. 407; *Wilkinson v. People,* 226 Ill. 135; 2 Russell on Crimes (5th Am. from 3rd London ed.), pp. 600 *et seq.; Pollard v. People,* 69 Ill. 148; *Young v. People,* 134 Ill. 37; *Morrell v. People,* 32 Ill. 499; *Pankey v. People,* 2 Ill. 80; 2 Bishop's New Criminal Law (8th ed.), sec. 1033; 2 Russell on Crimes (5th Am. ed.), p. 642; *State v. Budd,* 65 Ohio St. 1; *Commonwealth v. Pollard,* 12 Metc. 225.

## V.

The materiality of the testimony as to the impression produced by the libel. 25 Cyc., pp. 502 *et seq.*

A. In slander cases a witness may be asked as to the impression the words made upon him, or as to the sense in which the words were understood by the hearers. *Tottleben v. Blankenship,* 58 Ill. App. 47; *Foval v. Hallett,* 10 Ill. App. 265.; *McKee v. Ingalls,* 4 Scam. 32; *Nelson v. Borchenius,* 52 Ill. 236.

B. It is not permissible for readers of an alleged libelous article to testify as to its meaning. *Gribble v. Pioneer Press Co.,* 34 N. W. 30; *Quinn v. Prudential Ins. Co.,* 90 N. W. 349; *Beardsley v. Maynard,* 4 Wend. 337; *Rep. Pub. Co. v. Miner,* 20 Pac. 345; *Hearne v. De Young,* 52 Pac. 150; *Railway Co. v. McCurdy,* 8 Atl. 233; *Anderson v. Hart,* 27 N. W. 289; *Smart v. Blanchard,* 42 N. H. 137.

C. If words are not actionable in themselves, the testimony as to their effect or meaning is incompetent. *Hamm v. Wickline,* 26 Ohio St. 81.

D. Perjury cannot be assigned on cross-examination where. the direct testimony was not material. *Wilkinson v. People, supra;* 22 Ency. of Law, 687; *Stanley v. United States,* 33 Pac. 1025.

## VI.

The publication is not libelous *per se.* 25 Cyc. 250; *Cerveny v. News Co.,* 139 Ill. 345.

A. An innuendo and colloquium are essential. 25 Cyc. 439, 441; *Patterson v. Edwards,* 2 Gilm. 720; *Strader v. Snyder,* 67 Ill. 404; Townsend on Slander & Libel (3rd ed.), pp. 198 *et seq.*

B. An innuendo cannot enlarge the meaning of words, or make certain that which is uncertain. There must be an averment of extraneous matter, so that the court can see that the libel is susceptible of the meaning attributed to it. 25 Cyc. 449; *Gault v. Babbitt,* 1 Ill. App. 130; *Brown v. Bur-*

*nett,* 10 Ill. App. 278; *Herrick v. Tribune Co.,* 108 Ill. App. 244; *Patterson v Edwards,* 2 Gilm. 720; *Strader v Snyder,* 67 Ill. 404; *Brown v. Brown,* 14 Me. 317; *Carter v. Andrews,* 16 Pick. 1; *Weed v. Bibbins,* 32 Barb. 315; *Railway Co. v. Sheftall,* 45 S. E. 687; *Wallace v. Homestead,* 90 N. W. 835; *Kilgour v. Newspaper Co.,* 53 Atl. 716; Townsend on Slander & Libel (3rd ed.), secs. 308, 335, 336, 337, 338, 341, 342; *Van Vechten v. Hopkins,* 5 Johns. 210; *Moss v. Harwood,* 46 S. E. 385; Russell on Crimes (5th Am. ed.), 644, 647; *McLaughlin v. Fisher,* 136 Ill. 111; *McLaughlin v. Schnellbacher,* 65 Ill. App. 50; Newell on Slander & Libel, secs. 18, 34, 35; *Railway Co. v. McCurdy,* 8 Atl. 230; 2 Bishop's New Criminal Proc. (4th ed.) secs. 785, 786, 793, 794; *Lanston v. Linotype Co.,* 147 Fed. 871 (aff. 154 Fed. 42); *Ukman v. Daily Record Co.,* 88 S. W. 60; *Kenworthy v. Brown,* 92 N. Y. S. 34; *Harkness v. News Co.,* 102 Ill. App. 163; *Patterson v. Edwards,* 7 Ill. 720; *Smith v. Gafford,* 33 Ala. 168; *Jorallmon v. Pomeroy,* 22 N. J. L. 271.

## VII.

If the pamphlet was not libelous the testimony given on the trial was not material *Rex v. Dunston,* R. & M. N. P. R. 109; 21 Eng. C. L. 712; *Morrell v. People,* 32 Ill. 499; *Rex v. Benesech,* Peake Add. C. 93; Russell on Crimes (5th Am. ed.), p. 601, 602; *Leak v. State,* 61 Ark. 599.

Windes, J. (orally) :—

In the Myers case, I heard arguments all day long and I had to cut off counsel in order to get home Saturday night. I refer to counsel for the defense; I did not cut off the state. That is on that indictment for perjury. I will not attempt to review the innumerable authorities cited to me on the argument of the cause, but I will merely state, as quickly as I can, the conclusions at which I have arrived. Owing to the great pressure of other business, I have not been able to give the full consideration to the case I should have been glad -

to give. Since this argument, I have tried three manslaughter cases and a large number of less important cases.

The statute with regard to perjury reads as follows:

"Every person, having taken a lawful oath or made affirmation, in any judicial proceeding, or in any other matter where by law an oath or affirmation is required, who shall swear or affirm wilfully, corruptly and falsely, in a matter material to the issue or point in question, * * * shall be deemed guilty of perjury. * * * " (Sec. 225, ch. 38, Rev. Stats. of Ill.)

The words "material to the issue or point in question" are very important in this case, though, of course, the statute with regard to the offense is of great importance in every indictment for perjury or subornation of perjury.

There are three counts in this indictment. They all allege that the defendant Myers swore to certain things in substance. The latest expression of the supreme court of this state on this proposition is in the case of *Wilkinson v. People,* 226 Ill. 135. It seems to me to be a very carefully considered case. The court, in passing upon the sufficiency of the indictment in that case, at page 140, says:

"All the precedents to which our attention has been called, in a case like this aver that it became a material matter whether the defendant made the false statements assigned for perjury in the indictment. We do not regard the averment that the testimony was material to the issue, generally, as sufficient. Moreover, the so-called second assignment of perjury, and each of those following, as shown above, is, that he, Linder Wilkinson, upon the trial of said indictment aforesaid, then and there further unlawfully, knowingly, wilfully and feloniously testified on a matter material to the issue aforesaid, in substance, etc. There is no averment here that the testimony was corruptly given, which is always necessary in an indictment for perjury. Neither is it sufficient to state the substance of the alleged false testimony."

That seems to be in conflict with all other decisions of our supreme court, as I construe them, especially *Hereford v. People,* 197 Ill. 222, 238, but being the later expression of

the supreme court, it ought to be followed, and the court in this case uses this language (226 Ill. 135, 141) :

"In criminal pleading the highest decree of certainty is always required."

The second and third counts of the indictment allege, in substance, that Myers swore that he did not remember certain things that he was asked about,—the alleged perjured testimony. I think that what is said by the court of appeals of New York in *People v. Doody,* 64 N. E. 807, 172 N. Y. 165, is applicable. I did not read the decison, as I thought it was in accordance with reason clearly, and counsel on both sides argued it quite at length. While there are decisions—a number of them—to the contrary, there are none such in this state, I believe, directly to the point, and the decision in that case appeals to my ideas with regard to perjury.

It is a matter of proof as to whether or not a man remembered a specific thing. A man may get on the stand today and swear that he did not remember certain things material to the issue in question, and it would be shown by a hundred witnesses that he had said two hours before that he did remember all about it. Of course, that is an extreme case, but insofar as the indictment alleges that he did not remember so-and-so, I think it is good. It is a matter of proof.

The first, second and third counts of the indictment all fail to allege, in direct terms, that the alleged false testimony was material to the issue in the case that was being tried. I have read you the section of the statute. It says, "A matter material to the issue or point in question." There must be no doubt, I think, from the allegations of the indictment, that the alleged false testimony was material to the issue, and in this last decision to which I have referred, the Wilkinson case, the court uses this language (p. 145) :

"It is well understood that in every prosecution for perjury it is essential that the alleged false testimony must have been material to the issue upon trial."

Now, a matter may be material in a suit when not material to the issue. There are numerous authorities to that effect, for instance, on the question of credibility. A matter

may be material, but not material to the issue. Now, the third count alleges—I mean it is claimed that the testimony set up in the third count, which it is alleged was false, was the cross-examination of the witness. Now, it is said that the testimony on the direct examination was not material to the issue. There is some doubt in my mind whether, strictly speaking, it is material to the issue in the libel case, but from a reading of *Nelson v. Borchenius*, 52 Ill. 236, and *Dexter v. Harrison*, 146 Ill. 169, 173, and the appellate court cases cited by counsel for the state,[1] I think that the testimony there referred to and alleged to be perjury is, in part, material. I think it is material here. Speaking of the person Andrews, with whom he had talked:

"Q. What, if anything, did Andrews say to you?"

Now, that I do not regard material.

"Q. State to the court what impression the reading of it made upon you, as to whether it was intended to charge Robert D. Lay with surreptitiously and wrongfully appropriating from the funds of that company $8,000 in excess of his salary?

"A. It made no such impression."

Under *Nelson v. Borchenius*, 52 Ill. 236, I think that part was material to the issue as to how the libel would be considered. Also this:

"Q. State whether or not, in your opinion, the language used is or is not compatible with perfect honesty on the part of Lay?

"A. Yes."

That testimony is material, I think, but there is not a word of the cross-examination that relates to that part of the testimony of the witness. Therefore, it is not germane, I think, to the direct testimony, and it could not, for that reason, be assigned as perjury. That is decided in the Wilkinson case, also.

A number of other points were made by counsel in the

---

[1] *Tottleben v. Blankenship*, 58 Ill. App. 47; *Foval v. Hallett*, 10 Ill. App. 265. See also *McKee v. Ingalls*, 4 Scam. 30.—Ed.

argument, but it seems to me that they are mostly very technical, and it is not necessary to go into them.

For the reason that I have stated here, that all the counts allege that the testimony which is claimed to be perjury was in substance as follows, and that the testimony set up in the three counts is all cross-examination not germane to the direct, perjury cannot be assigned thereon, and because none of the counts allege clearly and directly that the testimony was material to the issue in the case, I will quash all the counts of the indictment.