## JOHN KIZER

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 24, 1904.*

1. PERJURY—*what a sufficient charge that perjury was committed in judicial proceeding.* An indictment for perjury sufficiently charges that the offense was committed in a judicial proceeding where it names the court and the judge thereof, its location, term, the parties to the cause and nature of the action, and states that the cause was tried in due form of law by a jury.

2. SAME—*indictment for perjury must show that court had jurisdiction.* An indictment for perjury must specify the court, tribunal or officer before which the alleged false testimony was given, in such way as to show jurisdiction; and if such tribunal is a court of limited jurisdiction, it must appear the court was legally constituted and the subject matter of the inquiry within its jurisdiction.

3. SAME—*what is a sufficient charge of jurisdiction under the statute.* Under the statute an indictment for perjury sufficiently charges jurisdiction which sets forth the substance of the offense charged and before what court the oath or affirmation was taken, averring the said court to have had full power to administer the same, together with proper averments of the falsity of the testimony whereon the perjury is assigned.

4. SAME—*averment that clerk of court had authority to administer oath is an averment of jurisdiction.* An averment in an indictment for perjury that the accused was duly sworn before the clerk of the court in which the trial was had and that the clerk "had full power and authority to administer the oath," is, in legal effect, an averment that the court had jurisdiction of the subject matter. (*Maynard* v. *People,* 135 Ill. 416, adhered to.)

5. SAME—*rule as to averment that alleged false testimony was material.* If it appears from specific averments of fact in the indictment or from a general averment that the testimony upon which the perjury is assigned was material in the trial of the original cause, the indictment will be sustained in that respect.

6. SAME—*evidence as to conversation not testified to on original trial should be excluded.* On a trial for perjury for swearing that the accused did not make a certain answer to a question in a particular conversation, evidence that he made the answer at another conversation which was not called to the attention of the accused on the original trial and with respect to which he did not testify cannot be considered by the jury and should be excluded.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. M. W. THOMPSON, Judge, presiding.

Plaintiff in error was indicted for perjury at the October term, 1903, of the circuit court of Coles county, and at the January term of said court was tried and found guilty as charged in the first and third counts of the indictment, the court having sustained a motion to quash the second count, and judgment was entered sentencing the plaintiff in error to imprisonment in the penitentiary. The court having overruled a motion in arrest of judgment and for a new trial, this writ of error was sued out of this court to review the record of the trial court.

It appears from the evidence that plaintiff in error, with one George Kizer, was indicted at the March term, 1903, of the city court of Mattoon for gaming and for running a gaming house. The indictment contains numerous counts for gaming and for keeping a gaming house at 1606 Broadway, in the city of Mattoon. At the September term, 1903, of the city court that case was tried, and the plaintiff in error was found guilty on one count for keeping a gaming house and acquitted on all other counts. The other defendant in that indictment, George Kizer, was acquitted. On this trial in the city court John Kizer testified, among other things, that when the officers entered the second floor of 1606 Broadway, in the city of Mattoon, he could not remember just what was said and done, although he stated he did not make any reply to the question of Dennis Lyons, the chief of police of the city of Mattoon, as to whether or not he was the boss or proprietor of the room, and perjury is assigned on that testimony of plaintiff in error. The prosecution in the perjury case offered, first, the court reporter, with her notes as to a portion of the evidence of John Kizer in the case in the city court, and then placed on the stand the chief of police, Dennis Lyons, and four other officers,—Jenkins, Sheehan, Springer and Shelley. One of the jurors, Pardick, in the trial in the city court, was also introduced by the prosecution

to show that on that trial Kizer said he did not make any answer to this question of the chief of police. The clerk of the city court was also introduced to show the administering of an oath to plaintiff in error in that trial, the offering of the indictment and the criminal record of said city court. On behalf of the plaintiff in error, one of the police officers, Graham, and ten of the persons in the room at the time the officers entered it, and the juror, Pardick, and the bar-tender of the saloon below, were put on the stand.

The testimony shows that the chief of police and the officers above mentioned, and another police officer, Graham, on the night of January 15, 1903, made a raid on the place over 1606 Broadway, in the city of Mattoon, on the ground that there was gaming being conducted there. This is a two-story brick building situated on the north side of Broadway, which extends east and west. There is a saloon on the ground floor. The saloon entrance opens on Broadway, and there is a stairway leading from the street to the second floor. At the top of the stairway there is a small lobby about six by eight feet. One door of it opens north and another opens west, the west door opening into the south room of the second floor and the north door opening into the middle room, there being three rooms in this part of the second floor. In the north-east corner of the saloon there is a stairway leading up-stairs, which leads into the north-east corner of the second floor. In the north-west corner of the second floor there is a water closet. Between the north room and the middle room there is a partition, in which there is a place for a door but no door at the time. In this middle room, on the night of this raid, there was a crap table and some cards and checks and about sixteen or eighteen men, but nothing was going on at the time the officers entered the room.

As grounds for reversal it is urged that the court erred in not quashing the indictment and in not arresting judgment. Various objections are urged to the evidence, as to its materiality, admissibility, and, finally, that it is insufficient to sustain the verdict and judgment. Objections are

also urged to the giving, refusal and modification of instructions, and also that the court should have granted a new trial.

CRAIG & KINZEL, (E. C. & J. W. CRAIG, Jr., and JOHN S. HALL, of counsel,) for plaintiff in error.

H. J. HAMLIN, Attorney General, (JOHN F. VOIGT, Jr., State's Attorney, and J. L. BENNETT, Assistant State's Attorney, of counsel,) for the People.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

It is urged that the indictment in this case is insufficient, in that it does not aver (1) that the alleged perjury was committed in the course of a judicial proceeding; (2) that it is not averred that the court had jurisdiction of the parties and the subject matter of the original proceeding; (3) that the present indictment shows and avers that plaintiff in error was on trial at the time of the alleged perjury for two distinct offenses,—*i. e.,* gaming and keeping a gaming house,— upon which the facts peculiar to each offense were material on the trial to that offense alone, and that the indictment does not aver as to which offense the facts were material, or that the matter upon which the perjury is assigned was material to the issue upon either of said charges.

As to the character of the proceeding, it is averred that "at the September term, in the year of our Lord one thousand nine hundred and three, of the city court of the city of Mattoon, county of Coles and State aforesaid, the Hon. L. C. Henley, judge of said city court, presiding, a certain issue between the People of the State of Illinois and one George Kizer and one John Kizer in a certain trial for unlawfully keeping a common gaming house and unlawfully gaming, wherein the said People of the State of Illinois were plaintiffs and the said George Kizer and John Kizer were defendants, came on to be tried in due form of law, and was then and there tried by a jury of the country in that behalf duly

sworn and taken before the parties aforesaid, upon which said trial John Kizer, late of the city of Mattoon and county of Coles and State of Illinois, then and there appeared as a witness," etc. We think from the foregoing averment of facts that it sufficiently appears that the proceeding was a judicial proceeding. The indictment names the court, the judge thereof, its location, its term, the parties to the cause, the nature of the action, and that the cause was tried in due form of law by a jury of the country taken before the parties and duly sworn. From such an averment it would seem that the conclusion of fact and law must be that the proceeding was a judicial proceeding, as much as if the additional averment had been made that the proceeding was a judicial one.

There is no averment in the indictment that the court had jurisdiction of the parties and of the subject matter of the proceeding. The offenses with which the parties were charged are stated in the indictment in the case at bar, but it is not there averred that the proceeding was based upon an indictment or information, or that the defendants in the cause were arraigned for trial, nor is it averred where the alleged offenses were committed. It is elementary that the indictment must specify the court, tribunal or officer in or before which the false testimony was given, in such way as to show jurisdiction, and if the tribunal is not a court of general jurisdiction but having only a special power of inquiry and limited jurisdiction, it must appear that the court was legally constituted and that the subject matter of the inquiry was within the jurisdiction of the court. *United States* v. *Wilcox,* 4 Blatchf. 391; *Conner* v. *Commonwealth,* 2 Va. Cas. 30; 16 Ency. of Pl. & Pr. 325, 326; 3 Wharton on Crim. Law, (6th ed.) secs. 2236-2248, 2211; *State* v. *Gallimore,* 2 Ired. 374.

The indictment charges that plaintiff in error "was then and there duly sworn by and before one T. M. Lytle, clerk of the said city court of the city of Mattoon, and before the said Hon. L. C. Henley, judge as aforesaid," etc., and "he,

the said T. M. Lytle, clerk of the said city court of the city of Mattoon, as aforesaid, then and there having full power and authority to administer the said oath to the said John Kizer in that behalf, and the jurors first aforesaid, upon their oaths aforesaid, do further present that at and upon the said trial between the said parties as aforesaid, it then and there became and was a material question whether the said John Kizer told one Dennis Lyons that he was the boss and proprietor of a room up-stairs over a saloon at No. 1606 Broadway, in the said city of Mattoon." And it is further averred in one count of the indictment that plaintiff in error, "not regarding the laws of this State but contriving and intending to pervert the due course of law and justice and unjustly aggrieve the said People of the State of Illinois in the said trial, and to deprive them of a fair and impartial trial and to unjustly acquit him, the said John Kizer, of unlawfully keeping a common gambling house," did, etc. And it is urged on behalf of the State that the averment that the clerk of the court had authority to administer the oath is a sufficient averment of the jurisdiction of the court, and that if that averment alone be not sufficient, then from the additional averments above mentioned the jurisdiction sufficiently appears.

Under our statute it is unnecessary, as at common law, to set out the record of the organization of the court, a copy of the indictment and a statement of the evidence of the original proceeding upon which the charge of perjury is based, but it is sufficient to set forth the substance of the offense charged upon the defendant and before what court the oath or affirmation was taken, averring the said court or authority to have had full power to administer the same, together with the proper averments to falsify the matters wherein the perjury is assigned. (Crim. Code, chap. 38, sec. 227.) If the indictment in question had contained the averment that the offense charged, upon which the original indictment rested, was one committed within the city of Mattoon, or if it had averred that the offense charged and being then inves-

tigated was within the jurisdiction of the city court of Mattoon, it would have been sufficient, for the reason that for offenses of the class mentioned in the indictment, committed within the city of Mattoon, the city court has concurrent jurisdiction with the circuit court, and is to that extent a court of general jurisdiction. (*McElwee* v. *People,* 77 Ill. 493; *Mackin* v. *People,* 115 id. 312.) But if offenses such as are there charged are committed without the limits of Mattoon, the city court would have no jurisdiction.

In *Maynard* v. *People,* 135 Ill. 416, the proceeding was before a police magistrate, and the averment was that the police magistrate had full power and authority to administer the oath, and in that case, as the police magistrate who administered the oath was the court who tried the cause, it was held that the averment was sufficient to show the jurisdiction of the court. In that case it was said (p. 425): "There is no perjury in false testimony given under the sanction of an oath unless such oath is administered by some one having legal authority, and the case, proceeding or matter in respect to which it is administered must be one of which the tribunal or magistrate has jurisdiction. (2 Bishop on Crim. Law,—5th ed.—sec. 1020.) Jurisdiction being an element without which there can be no perjury, it must appear with certainty, from the indictment, that there was jurisdiction; but this may be done either by direct averment that there was jurisdiction, or by the statement of facts from which the court can see that there was jurisdiction."

The *Maynard case* contains a general review and discussion of the question now under consideration, and this court in that case, after a full review of all the authorities, reached and announced its conclusion as follows (p. 426): "From the allegation in the indictment before us, that the police magistrate 'then and there had full power and authority to administer the said oath to the said Frank Maynard in that behalf,' it follows, by necessary implication, that the proceeding in which such oath was administered was one over which said police magistrate had jurisdiction. There is some

conflict in the authorities in respect to the point in question, but the decided weight of authority is in favor of the proposition that the averment of competent authority to administer the oath is sufficient to show jurisdiction.—*Rex* v. *Calaman,* 6 B. & C. 102; *Lacey* v. *Regina,* 2 Den. C. C. 504; 7 Eng. Law & Eq. 404; *Regina* v. *Lawler,* 6 Cox's C. C. 187; *People* v. *Phelps,* 5 Wend. 9; *Halleck* v. *State,* 11 Ohio, 400; *State* v. *Newton,* 1 G. Greene, 160; *State* v. *Cunningham,* 66 Iowa, 97; *State* v. *Ammons,* 3 Mun. 126; *State* v. *Hough,* 6 Ired. 3; *State* v. *Davis,* 69 N. C. 495; *People* v. *Kelley,* 59 Cal. 272; *People* v. *Ah Bean,* 77 id. 12; *State* v. *Keel,* 54 Mo. 187; *Commonwealth* v. *Hughes,* 5 Allen, 501; *Commonwealth* v. *Hatfield,* 107 Mass. 229; *Commonwealth* v. *Butland,* 119 id. 320." To the above authorities may also be added 16 Ency. of Pl. & Pr. 326, *Stofer* v. *State,* 3 W. Va. 689, and *Commonwealth* v. *Knight,* 12 Mass. 274.

We do not think sufficient is shown to warrant us in overruling the opinion in the *Maynard case,* wherein the above rule is established, and while the facts there and here bear the dissimilarity that there the magistrate who administered the oath was the court who tried the case and here the person who administered the oath was the clerk of the court that tried the case, we find by section 1 of chapter 101 of our statutes that only the court itself, or the clerk thereof, is authorized to administer oaths in proceedings pending in said court, and we find no authority or statute for the clerk of a State court, or for the clerk of any court, to administer oaths in causes pending in another court, from which it seems that the clerk is so identified with the court in matters pending before said court that an averment that the clerk administered the oath, and that he had authority to do so, carries with it the conclusion that the clerk having legal authority to administer the oath in the pending proceeding, the court had jurisdiction of the subject matter of that proceeding.

Our consideration is next invited to the question of the sufficiency of the averments of the indictment touching the

materiality of the testimony upon which the perjury is assigned. The definition of the crime as fixed by our statute is: "Every person, having taken a lawful oath or made affirmation, in any judicial proceeding, or in any other matter where by law an oath or affirmation is required, who shall swear or affirm willfully, corruptly and falsely, in a matter material to the issue or point in question, * * * shall be deemed guilty of perjury," etc., (Hurd's Stat. 1903, p. 658,) and the point made is, that the averment in the indictment is not in the language of the statute that the alleged false testimony was "in a matter material to the *issue* or *point in question.*"

The averment in the first count of the indictment, after stating the court where pending, the names of the parties and the charges upon which they were being tried, is, that "it then and there became and was a material question whether the said John Kizer told one Dennis Lyons that he was the boss and proprietor of a room up-stairs over a saloon at No. 1606 Broadway, in the said city of Mattoon;" and the averment in the second count, after stating the court in which the proceeding was, and the parties, and that the charge was unlawfully keeping a common gaming house and for unlawfully gaming, is, that "it then and there became and was a material question whether the said John Kizer told one Dennis Lyons," on, etc., "that he, the said John Kizer, was the proprietor of a certain gaming house and room over a saloon at No. 1606 Broadway, in said city of Mattoon, and that he, the said John Kizer, was the boss of a certain gaming house in said city of Mattoon, and that he, the said John Kizer, was the proprietor of a certain room at No. 1606 Broadway, in the said city of Mattoon."

The authorities are agreed that there are two methods of averring the materiality of the testimony upon which the perjury is assigned, in common use and recognized in practically all the courts of this country and of England, and are, first, that without setting out all the facts from which the court may see the materiality of the evidence, the particular

matter or testimony is set out with the averment of the pleader that it was material; or, second, the pleader may so state the issues and the matters sworn to in which it is alleged the perjury is committed, that the court, from the averment of the facts testified about and the nature of the cause in which the testimony was given, can see that the testimony was material; (16 Ency. of Pl. & Pr. 343;) and we can see no reason why both of these methods cannot be combined and used in the same indictment. Of course if both methods should be used, or if the averment of facts from which the supposed materiality should appear should be the method adopted, and the court could say, from an inspection of the indictment, that the facts thus averred showed that the testimony was not material to the issue or point in question in the case, the indictment would be held bad, even though it contained the averment that the testimony was material. 16 Ency. of Pl. & Pr. 344; *State* v. *Smith,* 40 Kan. 631; *People* v. *Brillian,* 58 Cal. 214; *People* v. *Gaige,* 26 Mich. 30; *State* v. *Sutton,* 147 Ind. 158; *State* v. *Bailey,* 34 Mo. 350; *Roberts* v. *People,* 99 Ill. 275.

In support of the proposition that the indictment must aver it was material to the issue or point in question, where resting upon the general averment of materiality, plaintiff in error cites *Morrell* v. *People,* 32 Ill. 499; *Pollard* v. *People,* 69 id. 148; *Young* v. *People,* 134 id. 37; *Commonwealth* v. *Pollard,* 12 Metc. (Mass.) 225.

In the *Morrell case, supra,* the indictment contained the averment, in the language of the statute, that the affidavit upon which perjury was assigned was "material to the point in question," but the indictment was held bad for lack of other averments. The affidavit was one for a continuance, and it was not averred that a motion for a continuance was made or the affidavit acted upon by the court. The only language used in that opinion that is applicable to the case at bar is (p. 501) : "It is a familiar rule of pleading that not only the falsity but the materiality of the fact must appear from the averments in the indictment."

In *Pollard* v. *People, supra,* the case was an indictment for perjury, but the question before this court was upon instructions, and not in reference to the indictment. Prefacing the discussion of a certain instruction it is said (p. 153): "It is a well settled rule that it must appear on the face of the facts set forth in the indictment that the matter sworn to and upon which the perjury is assigned was material, or there must be an express averment to that effect. The materiality of the matter sworn to must depend upon the state of the cause and the nature of the question in issue."

In the *Young case, supra,* the charge was perjury, and there, as in the *Pollard case,* the questions considered by this court were upon the instructions. The first instruction complained of was, that if the jury believed, from the evidence, beyond a reasonable doubt, that the defendant willfully testified falsely in a material matter in the trial of a cause in court, as charged in the indictment, the jury should find him guilty. Of that instruction it is said (p. 42): "In the first instruction the jury were directed to find the defendant guilty if he willfully testified falsely in a material matter on the trial of a cause in court, while the statute requires the false testimony, to make out perjury, to be 'in a matter material to the issue or point in question.' The defendant may have sworn falsely in a material matter and at the same time not sworn falsely in a matter material to the issue. On the trial of the ejectment suit it may have been a material matter who had held possession of the land and the time the possession was continued and under what title possession was held, and, under the instruction, if the defendant had sworn falsely on that branch of the case the jury were directed to convict, although that was not the point in issue."

Whatever may be the rule as applied to instructions, it seems to be the settled doctrine by the greater weight of authority that where it appears from the averments of fact in the indictment, or from the general averment, that the testimony upon which the perjury is assigned was material in the trial of the original cause the indictment will be sustained.

211 –27

*State* v. *Mumford,* 1 Dev. L. 519; 17 Am. Dec. 573; *Johnson* v. *People,* 94 Ill. 505; *Kimmel* v. *People,* 92 id. 457.

In the *Mumford case, supra,* the charge was: "Certain questions then and there became and were material, that is to say," etc. That case was decided in 1828, and contains a review of the English authorities upon the question. *Rex* v. *Aylett,* 1 T. R. 63, and *Rex* v. *Dowlin,* 5 id. 311, are particularly adverted to. In the *Aylett case* the statement in the indictment was that it became a material question on the hearing of the complaint, and in the *Dowlin case* it is stated that the question became material on the trial, in the same general terms that it is stated here. In the *Dowlin case* Lord Kenyon said: "But it has been objected that it was necessary to set forth in the indictment so much of the former trial as will show the materiality of the question on which the perjury is assigned. If it were necessary, and if the question arose on the credit due to the witness, the whole of the evidence given before must be set forth; but that has never been held to be necessary, it always having been adjudged to be sufficient to allege, generally, that the particular question became a material question. But here it is averred that the question on which the perjury was assigned was a material question, and the jury have found it to be so by their verdict." Following the English cases, the indictment in the *Mumford case* was sustained.

*Johnson* v. *People, supra,* was for perjury as to the qualification of a voter. Johnson swore that one Selberg was an actual and *bona fide* resident of the election district, and this was the particular matter upon which the perjury was assigned; and as to the materiality of the evidence the averment was: "It being then and there material that the said Oscar Selberg should be an actual and *bona fide* resident of said village of Gibson." The sufficiency of the indictment was questioned, but the indictment was sustained.

In the *Kimmel case* the indictment was for perjury before a grand jury upon an inquiry touching the crime of embezzlement. The language of the indictment was: "That

upon said investigation it became and was a material question whether the said John Kimmel, on the 15th day of February," etc., "had deposited in the bank of said Charles M. Willard, at Anna, Union county, Illinois, the sum of $525.71 in county orders in the name of Nancy M. Kimmel; and thereupon the said John Kimmel, having then and there so sworn," etc. The indictment was attacked upon the ground here urged, and it is there said (p. 459) : "In 2 Russell, 639, it is said: 'It is necessary that it should appear on the face of the indictment that the oath taken was material to the question depending. But it is not necessary to set forth in the indictment so much of the proceedings of the former trial as will show the materiality of the question on which the perjury is assigned, and it will be sufficient to allege, generally, that the particular question became a material question.' (See, also, 2 Chitty on Crim. Law, 307; *Pollard* v. *People*, 69 Ill. 148.) In the indictment, while the facts and circumstances under which defendant deposited money with Willard are not detailed, yet it is alleged that it became and was a material question, on the trial of the charge of embezzlement against Willard before the grand jury, whether the defendant had deposited $525.71 with the said Willard. This we regard as sufficient, without a statement of the facts showing wherein the matter sworn to was material."

It is suggested, however, by plaintiff in error that the particular issue to which the alleged testimony was material is not pointed out, and in that connection our attention is directed to the fact that there were probably four issues before the jury in that trial, namely, whether John Kizer was guilty of keeping a gaming house or gaming,—which presented two issues; and whether George Kizer was guilty of keeping a gaming house or gaming,—which presented two more issues; and it is said that as the accused is entitled to be specifically informed of the charge against him, the particular application of this evidence to one or the other of these issues is required by proper pleading. Under the averments in the indictment both the Kizers were charged with

the same offenses described by distinct counts in the indictment, both were indicted together and both tried together. It is charged in the indictment that John Kizer, before the trial for gaming and keeping a gaming house, had said to one Dennis Lyons that he was the boss or proprietor of a certain gaming house at a certain number in Mattoon, as described in the indictment, and that upon the trial of that case he willfully, falsely and feloniously swore that he did not tell or say these alleged things to Lyons, and it is alleged that they were material. It is easily perceived that they were applicable to and material upon the charge of keeping a gaming house, and no authority has been cited, and we think none can be, that requires the pleader to state with such nicety the particular application of the alleged false evidence. The case of *Hereford* v. *People,* 197 Ill. 222, is an example of very accurate and technical pleading, and would doubtless furnish a safe precedent in such matters; but the fact that the pleader in that case went into greater particularity than was required, cannot make the case authority upon the proposition that all other or subsequent cases must conform to it. The indictment, as a matter of pleading, was not before the court, but was set out that the substance of the charge might be preserved. In the light of the authorities we are unable to say that this indictment is not sufficient.

Various objections are urged as to the evidence admitted in this case, and it is earnestly contended by plaintiff in error that the preponderance is in his favor. Since we agree with this contention and must therefore reverse the case, it will not be necessary to discuss *in extenso* the various other objections urged. An impartial consideration of the record convinces us that the jury must have misapprehended the evidence in this case, and that there exists, so far as this record discloses, a serious and well founded doubt as to the guilt of the defendant.

On the night on which the room at 1606 Broadway, of which the plaintiff in error is claimed to have been the boss or proprietor, was raided, the chief of police, Dennis Lyons,

and officers Springer, Jenkins, Sheehan, Graham and Shelley, visited the place in question. Lyons, Springer and Jenkins entered at the front door of the saloon underneath the room in question and walked to the rear end, to the door opening into the stairway leading up-stairs. Sheehan was at the back door of the saloon, having gone through the alley, and Graham and Shelley went up the front stairway from the street. These parties were introduced as witnesses on behalf of the State, with the exception of Graham, who, although subpœnaed on behalf of the State, was put on the stand by the plaintiff in error. The evidence shows that Jenkins and Springer, at the direction of the chief of police, broke open the door leading up-stairs from the inside of the saloon, and then all three, Springer leading the way, went up-stairs. Sheehan says that he went up right after them, but Jenkins says that Sheehan did not come up until some time afterwards, and that he was not in the room when the controverted questions were asked. Rush, the bar-tender below, and who was at the door when the officers went up-stairs, says that Sheehan did not go up-stairs until some time after the other three, and that when he went up he found Sheehan at the head of the stairway. Some seven or eight witnesses swore that Sheehan was not present at the time the controverted questions were asked. When Lyons, Springer and Jenkins arrived at the top of the stairs, Lyons entered the middle room, where he found a number of people, and among them the plaintiff in error. Lyons asked who was the boss or proprietor of the place, and says that John Kizer answered that he was. Springer says: "I think it was John [plaintiff in error] that answered; that is my impression about it; I might have been mistaken about it, though." Jenkins testified positively that when the question was asked by Lyons as to who was the proprietor, Kizer, plaintiff in error, did not say anything. Sheehan testified that he was present and that he heard Kizer say that he was the boss or proprietor, but the overwhelming weight of the testimony is to the effect that Sheehan was not present.

Upon this point, then, as to whether plaintiff in error did tell Lyons that he was the boss or proprietor of the room, we have the testimony of Lyons that Kizer did assert that he was. Springer says he is not sure about it, and Jenkins, the other officer present, asserts positively that Kizer did not answer; while, on the other hand, ten witnesses on behalf of the defendant testified that Kizer never made the remark imputed to him. The testimony of the prosecution, taken alone, to say nothing of that offered by the defendant, does not, in our opinion, establish, beyond a reasonable doubt, the fact contended for by the prosecution and on which defendant's guilt must be predicated.

But if it be conceded that the testimony for the prosecution, taken alone, does establish the case made by the indictment, we are unable to say the facts necessary to be shown by the evidence are proven beyond a reasonable doubt. The credibility of no witness was in any manner attacked. The number testifying that the plaintiff in error did not say the things attributed to him, and upon which the charge is predicated, is overwhelming. All were present and had the same opportunity to hear, and the witnesses for plaintiff in error do not vary as to details and incidental matters more than do those for the prosecution. The record shows that after the first introduction of the police into the room, and after Lyons first asked the question who was the boss or proprietor of the room, officers Graham and Shelley, who up to this time had remained in the lobby at the head of the stairs, were let into the room by Lyons, who claims to have again then asked the question who was the boss or proprietor of the room, and that Kizer replied that he was. Shelley also says that Kizer said: "I am boss; what in the devil do you want?" Graham was standing close to Lyons at the time and by the side of Shelley, yet he says that he heard no such question or answer. Shelley admits that all the officers were in the room at the time, besides those who were there when the officers entered, and that these persons, some sixteen or eighteen in number, could have heard the question and reply the same

as he did, yet no other witness testifies to such conversation. It is also shown that Shelley previously testified in the city court in reference to what, if anything, John Kizer said about being boss: "Well, I don't know; I don't recollect of his saying anything about boss; I think Denny asked who was proprietor, and I don't know what John said in regard to the answer; I can't swear about that." This took place several months before the trial in the perjury case, and it is but reasonable to presume that the recollection of the witness would be as clear, or clearer, then than at the latter trial.

All of the testimony as to this second conversation, which it is claimed took place after officers Graham and Shelley were let in from the lobby, was objected to by the plaintiff in error and admitted over objection, and exception thereto. Granting the admissibility of this testimony relative to this alleged second conversation between Lyons and plaintiff in error, it was of such character as to at least leave the fact in very grave doubt. But the admission of evidence relative to this second conversation was improper, for the reason that only one conversation was testified to by the State's witnesses, or at all, upon the original trial for gaming and keeping a gaming house, and plaintiff in error was only called upon to testify as to what was said when the officers accompanying Lyons first entered the room, and perjury could neither have been committed nor inquired about relating to a matter or conversation not called to plaintiff in error's attention in the original trial and in regard to which he did not testify. The record unquestionably shows that the only testimony given on the original trial for gaming and keeping a gaming house, relating to the conversation with plaintiff in error when the officers made the raid, was as to what was said when the officers first entered, and that the supposed conversation that took place when Graham and Shelley were let in from the lobby, when it is claimed plaintiff in error said, "I am the boss; what in the devil do you want?" was in no manner adverted to. It is therefore not possible that plaintiff in error could or did testify in regard to that con-

versation, or that perjury could be assigned upon it or established by proof relating to it.

The record further shows that after this improper testimony was admitted over objection, plaintiff in error moved the court to exclude the same. The jury retired that the court might hear argument touching it, and the court announced that he would exclude it. The jury returned, and the court said : "Gentlemen of the jury, in this case the prosecution is limited in the indictment to the conversation that occurred when the chief of police first went into the room, and you are instructed now that no verdict of guilty can be had upon any other conversation or reply that the defendant may have made to the chief in response to the question that was asked after the question was asked the first time after going into the room. All of the testimony may be considered by you in arriving at a verdict in this case, but the evidence must show, beyond a reasonable doubt, that defendant swore falsely in the trial of this case at Mattoon, as alleged in the indictment, as to the question when it was first asked him that evening by the chief of police." This was error. The court should have excluded it. This was not done, but the jury were told that they could not convict upon it but should consider it. The ruling of the court was in the form of an instruction, and went far beyond the province of a mere ruling upon the admissibility of the evidence. We think the remarks of the court cannot be regarded as an instruction and obnoxious to the rule requiring instructions to be in writing. We hold the ruling of the court wrong, and believe that in the manner given it was highly prejudicial to the rights of plaintiff in error.

Complaint is made of instructions, but we deem it unnecessary to extend this opinion to discuss them, as most of the defects complained of relate to the omission of matters that are hardly likely to occur upon a re-trial of the cause.

The judgment of the circuit court will ·be reversed and the cause remanded for further proceedings.

*Reversed and remanded.*