# ETHEL GRAY v. STATE.

No. A-206.  Opinion Filed November 23, 1910.

1.  PERJURY—Information—Negativing Truth of Statements.  An information for perjury which alleges that the defendant wilfully, corruptly and falsely testified to a certain stated fact; that said statement was then and there not true, but false; and was not then and there believed by the defendant to be true, but was by the defendant believed to be false, sufficiently negatives the truth of the alleged false testimony, without setting out the true facts by way of antithesis.

2.  SAME—Alleging Jurisdiction of Court.  Under sec. 6711, Snyder's Comp. L. Okla., an allegation in an information ' for perjury that the clerk of the court before whom the false oath was alleged to have been taken had authority to administer it, is a sufficient averment that the court had jurisdiction of the cause in which the perjury was charged to have been committed.

3.  PERJURY—Evidence—Result of Trial in Question.  In a prosecution for perjury alleged to have been committed in the trial of a certain criminal case in testifying in behalf of the defendant therein, it is ordinarily not competent for the state to prove that such trial resulted in a conviction.

4.  SAME—Instructions as to Purpose of Such Evidence.  Where, in a prosecution for perjury charged to have been committed in testifying in behalf of an accused in the trial of a certain criminal case, the state proves without objection that such trial resulted in a conviction, it is proper for the court to instruct the jury that such evidence may be considered by them only as tending to show that the alleged perjured testimony was given in a judicial proceeding, as alleged, and not as tending to show the falsity of such testimony.  But it is not error for the court to omit to give such instruction if no request therefor is made.

5.  INSTRUCTIONS—Mere Verbal Inaccuracies.  An instruction must be considered as a whole; and when so considered, if it properly and intelligibly states the law, mere verbal inaccuracies will not vitiate it.

6.  WITNESSES—Impeachment—Cross-Examination.  In a prosecution for perjury alleged to have been committed in the trial of a certain criminal case, it is not error for the state to ask defendant's witness if he, too, is not under indictment for perjury committed in the trial of that same criminal case.

7.  PERJURY—Instructions—Refusal.  In a prosecution for perjury, where the whole of the defendant's testimony, in giving

which the perjury is charged to have been committed, is read to the jury by the court reporter who took it in the former trial, and where the defendant in the perjury trial does not take the stand in his own behalf, the court should not, at the defendant's request, instruct the jury that they shall consider his former testimony as read to them as his testimony in the instant case.

(Syllabus by the Court.)

*Appeal from District Court, Muskogee County; John H. King, Judge.*

Ethel Gray was convicted of perjury, and she appeals. Affirmed.

*J. E. Wyand, De Roos Bailey* and *Thos. Marcum,* for plaintiff in error.—On sufficiency of information: 2 Bishop, Crim. Proc. secs. 910a, 918; *Rohrer v. State,* 13 Tex. App. 167; *Gabrielsky v. State,* 13 Tex. App. 437; *Rich v. U. S.,* 1 Okla. 359; *U. S. v. Hess,* 124 U. S. 483; *Pettibone v. U. S.,* 148 U. S. 197; *Anderson v. State,* 18 Tex. App. 17. On necessity of instruction limiting effect of evidence: *Washington v. State,* 23 Tex. Cr. App. 338; *Littlefield v. State,* 24 Tex. Cr. App. 169; *Davidson v. State,* 22 Tex. Cr. App. 382. On question of proper cross-examination: *Slater v. U. S.,* 1 Okla. Cr. 275.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.—On sufficiency of information: *People v. Ah Bean,* 77 Cal. 12; *People v. De Carlo,* 124 Cal. 452; *People v. Ennis,* 137 Cal. 263.

RICHARDSON, JUDGE. Plaintiff in error demurred to the information in this case on the ground that the facts alleged were insufficient to constitute an offense. The deficiencies complained of were two: First, that the information did not properly negative the truth of the alleged false testimony; and second, that it did not allege that the court before which the perjury was charged to have been committed had jurisdiction of the cause in which the alleged false testimony was given, nor did it state facts showing jurisdiction in such court. The court overruled the demurrer, and its action in so doing is assigned as error.

The information, omitting formal parts, was as follows:

"Now comes W. J. Crump, the duly qualified and acting county attorney, in and for Muskogee County, State of Oklahoma, and gives the District Court of Muskogee County, State of Oklahoma, to know and be informed that Ethel Gray did, in Muskogee County, and in the State of Oklahoma, on or about the 23rd day of October, in the year of our Lord one thousand nine hundred and eight and anterior to the presentment hereof, commit the crime of perjury (for which she has had a preliminary examination before an examining magistrate in said county and state) in the manner and form as follows, to wit:  That the said Ethel Gray, in the County of Muskogee, State of Oklahoma, on the 23rd day of October, 1908, in the District Court for the Third Judicial District, sitting at Muskogee, the Hon. John H. King, the regularly elected, qualified and acting judge for said district, then and there presiding and acting, wherein the case of the State of Oklahoma v. John Cieloha, charged with murder, being No. 129 on said court docket, was then and there being tried and heard before the court aforesaid, and the said Ethel Gray was then and there produced as a witness in said case on behalf of the defense, and was then and there duly sworn to testify truly in said case by E. A. Coker, the duly acting and qualified deputy clerk of the district court aforesaid, who was then and there duly authorized and empowered to administer oaths in such cases, and to administer said oath in that case, in manner and form as was then and there done as aforesaid. That then and there it became a material question in said case whether John Cieloha, the defendant in said case, and Ethel Gray, the witness in said case, were in Muskogee at a certain carnival show on the evening of June 11th, 1908; that then and there being a witness as aforesaid, the said Ethel Gray did knowingly, wilfully, corruptly, feloniously and falsely testify, depose and say in substance and effect that she and the said defendant, John Cieloha, were in Muskogee together on the evening of June 11th, 1908, at the carnival show, in all which particulars the testimony, statements and declarations so testified and deposed unto by the said Ethel Gray were then and there material matter in and to said case of the State of Oklahoma v. John Cieloha, charged with murder, as aforesaid, instituted, begun and heard, as aforesaid, and were then and there not true, but false, and were then and there by said Ethel Gray not believed to be true, but were then and there by said Ethel Gray believed to be false, contrary to the .

form of the statutes in such cases made and provided and against the peace and dignity of the state."

The first contention is that, in addition to the averments contained in the information as to the falsity of the testimony upon which the perjury was predicated, it was also necessary to negative the truth of such testimony by setting out the true facts by way of antithesis; in other words, that the information should have further negatived the truth of plaintiff in error's testimony wherein she swore that she and John Cieloha were in Muskogee together on the evening of June 11, 1908, at a carnival show, by charging that, "Whereas, in truth and in fact, the said Ethel Gray and the said John Cieloha were not in Muskogee together on the evening of June 11, 1908, at a carnival show." Such is the usual and better way of assigning the perjury, and some text-writers and many adjudged cases hold that such an allegation or its substantial equivalent is indispensable. While we commend the form contended for, and think it better pleading than that used in this case, yet under our statutory provisions we do not regard it as absolutely essential. Section 6704 of Snyder's Comp. Laws provides that the indictment is sufficient if "the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended." This information alleges explicitly that plaintiff in error "knowingly, wilfully, corruptly, feloniously and falsely" swore that she and John Cieloha "were in Muskogee together on the evening of June 11, 1908, at a carnival show, in all which particulars the testimony, statements and declarations so, testified and deposed unto by the said Ethel Gray * * * were then and there not true, but false, and were then and there by said Ethel Gray not believed to be true, but were then and there by said Ethel Gray believed to be false." And we think that any person of common understanding would know from this allegation that it was intended thereby to charge that in truth and in fact Ethel Gray and John Cieloha were not in Muskogee together at a carnival show

on the evening of June 11, 1908. The information alleged that said statement was false in every particular, and that it was corruptly and falsely made, and the addition of the clause suggested would have constituted in effect a mere repetition of that averment, a thing declared by the statute to be unnecessary. Sec. 6705 of Snyder's Comp. Laws also provides that "no indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits." And we think that the defect complained of, if it be a defect, under the circumstances of this case, where the perjury was assigned upon only one statement and that short and plain, was one of form merely; and this record shows affirmatively that it in no manner tended to the prejudice of the substantial rights of the accused on the merits. She knew exactly what was intended to be charged, and the evidence introduced in her behalf went squarely to that issue.

Also sec. 2176 of Snyder's Comp. Laws defines perjury as follows:

"Every person who having taken an oath that he will testify, declare, depose or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states any material matter which he knows to be false, is guilty of perjury."

And in *People v. Ennis,* 137 Cal. 263, 70 Pac. 84, the Supreme Court of California, construing this same statute in passing upon this same question, said:

"The averment that the defendant did 'wilfully, unlawfully, and contrary to said oath' make certain specified statements, and that 'said statements so made as aforesaid were then and there, and are, false and untrue, and were at the time of the making thereof by the said defendant, Arthur Ennis, known by the said defendant to be false and untrue,' sufficiently shows that the defendant testified falsely."

In *Lawson v. State,* 71 Tenn. (3 Lea) 309, the indictment alleged that "Edward Lawson feloniously, wilfully, deliberately, absolutely and corruptly swore then and there before the Grand Jury

aforesaid, that, he, the said Edward Lawson, had bought one pint of whisky from one Fanny Chambers, and that he, the said Edward Lawson, had paid her, the said Fanny Chambers, fifty cents for said pint of whisky, and which said swearing was material to the point under investigation by the said Grand Jury, and was knowingly, maliciously, feloniously, wilfully, deliberately, absolutely and corruptly false, and the said Edward Lawson then and there well knew the same to be false in point of fact when he deposed it." On appeal the sole point relied upon for a reversal was that the indictment did not properly or sufficiently negative the truth of the testimony upon which the perjury was assigned. To this the Supreme Court of Tennessee, in holding the indictment sufficient, said:

"At the common law, the general averment that defendant swore falsely, would not be sufficient, it being deemed essential that the words of the false swearing should be expressly and in terms contradicted. 3 Am. Cr. L., sec. 259. But we have statutory enactments intended to simplify and abbreviate the prolixity of the common law form of indictments.

"Experience has shown how difficult it is, in the hurry of the duties of his office, for the attorney general to avoid mistakes, especially in drawing an indictment for perjury in the common law form. Our Code provides, sec. 5114, as to all indictments, that the facts constituting an offense, shall be charged in concise language, without prolixity or repetition.

"And as to perjury, it specially provides that it is sufficient to give the substance of the controversy or matter in respect to which the offense was committed and in what court or before whom the false oath was taken; and that the court or person before whom it was taken had authority to administer it, 'with proper allegations of the falsity of the matter on which the perjury is assigned.' Section 5130.

"This, we think, has been all done 'in ordinary and concise language,' and as explicitly and intelligibly expresses a charge of perjury as the most prolix and technical common law indictment could do.

"And while we do not recommend a hasty departure from long used and approved forms, our experience satisfies us that

cautious and well-considered changes which simplify, and at the same time preserve the substance of such forms, are subservient to the ends of justice. We think, therefore, the indictment in this case is a substantially good one, containing as it does proper and distinct allegations of the falsity of the matter which is set out as constituting the false swearing."

In *Johnson v. State,* 76 Ga. 790, the court held that, "Where the indictment alleged that 'by her own act and consent, and of her most wicked and corrupt mind, in manner and form aforesaid, she wilfully, knowingly, absolutely and falsely did commit wilful perjury,' this was a sufficient allegation that her testimony was false, without setting out in opposition to it what was the truth."

Again in *People v. Williams,* 50 Hun. (N. Y.) 601, 2 N. Y. Suppl. 382, the court said:

"Section 291 of the Code of Criminal Procedure provides that an indictment for perjury shall contain 'proper allegations of the falsity of the matter on which the perjury is assigned.' The indictment in this case contains the allegation that the defendant 'wickedly, knowingly, designedly, corruptly, falsely, and feloniously' testified to certain matters specified, and it does not otherwise allege the falsity of the testimony given. For that reason the indictment was held insufficient. Section 684 of the same statute provides that no departure from the form or mode prescribed by the Code in respect to any pleading renders it invalid, unless it have actually prejudiced the defendant, or tend to his prejudice, in respect to a substantial right. The two sections cited must be read together, as bearing upon the sufficiency of the indictment in question.

"And, first, is not the allegation of the indictment a substantial compliance with the requirement of section 291? Is it not an allegation of the falsity of the matter upon which perjury is assigned? It charges that the matter was falsely testified. Is not that equivalent to the charge that the matter testified was false? But, second, if it be held that the allegation is not in full compliance with the requirement of section 291, is the departure anything more than a matter of form? And, if not, has it prejudiced the defendant, or does it tend to her prejudice, in respect to a substantial right?

"We think the two sections, read together, uphold the form of pleading adopted by the district attorney. The allegation that certain testimony, specified, was falsely given, differs only in form from the allegation that the testimony given was false. A man cannot falsely testify to that which is true. Even though he intended to falsify, if what he testifies to is in fact true, he does not testify falsely. In the case of the *People v. Clements,* 107 N. Y. 205, 13 N. E. Rep. 782, the court of appeals held that an allegation that the defendant well knew the matter sworn to be false was a sufficient allegation of its falsity; and the court (by Rapallo, J.) says: 'The objection to this indictment, if there be any, was that the falsity of the statement sworn to was only argumentatively alleged. But that it was fairly and even necessarily to be implied from the facts stated is very clear. The objection goes only to the form of the allegation.' And the indictment in that case was justified under the provisions of section 285 of the same statute, which declares that no indictment is insufficient by reason of imperfections in matters of form which does not tend to the prejudice of the substantial rights of the defendant on the merits. The provisions of section 684, *supra,* seem to be even more directly applicable to those cases than those of section 285. The latter section is general in its application, and is intended to cure defects in form under the general rules of criminal pleading. Section 684 more specifically cures deviations from the particular forms prescribed by the statute itself, of which the section forms a part, including the special requirements of section 291 in respect to indictments for perjury. The defect in this indictment, if any, being merely in the form of the allegation of the falsity of the testimony specified, and such defect of form not being such as to prejudice or tend to prejudice the defendant in respect to a substantial right, we must hold it to be immaterial, and the indictment good. The judgment sustaining the demurrer must be reversed, the demurrer overruled, and the case remitted to the court of sessions to proceed upon the indictment."

See, also, *People v. Clements,* 107 N. Y. 205. We are in accord with the decisions quoted, and therefore hold that the information sufficiently averred the falsity of the testimony alleged to have been given.

In support of the contention that the information failed to aver that the court had jurisdiction of the proceeding in which it

is alleged the perjury was committed, it is urged that the information contained no direct allegation that the court had jurisdiction, and no averment that the cause then in hearing was being prosecuted by an indictment or information; one or the other of which was necessary to give the court jurisdiction of the cause. It is true that the court must have had jurisdiction of the cause in hearing before perjury could have been committed therein, and that the fact of such jurisdiction must be averred in some proper manner. Under the common law it was necessary that the facts essential to the jurisdiction of the court be pleaded, and that with considerable particularity; but under our statute, and in the great majority of the states as well as in England now, that is no longer necessary, it being sufficient if the accusation contains the allegation that the court then and there had jurisdiction of said cause, or any other allegation substantially its equivalent in effect and meaning. We, and nearly all of the other states, have a statute (sec. 6711, Snyder's Comp. L. Okla.) prescribing the requisites of an indictment for perjury, which reads as follows:

"In an indictment for perjury, or subornation of perjury, it is sufficient to set forth the substance of the controversy or matter in respect to which the offense was committed, and in what court or before whom the oath alleged to be false was taken; and that the court or person before whom it was taken had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned; but the indictment need not set forth the pleadings, record, or proceedings with which the oath is connected, nor the commission or authority of the court or person before whom the perjury was committed."

This statute has been construed by the highest courts of many states, and so far as we are able to find, it has been uniformly and we think correctly held that under the statute an allegation that the court or person before whom the false oath was charged to have been taken had authority to administer it, is an allegation, and a sufficient one, that the court or tribunal then and there had jurisdiction of the matter pending, and is equivalent to an averment of every fact essential to the court's jurisdiction. Thus it is said in *Eighmy v. People,* 79 N. Y. 546:

"It is not necessary, even in an indictment for perjury committed before an inferior court, to set out all the facts to show authority of such court of limited jurisdiction, and it is sufficient to aver that it had sufficient and competent authority to administer the oath; (*Reg. v. Lawler*, 6 Cox Cr. Cas., 187; *Lavey v. The Queen*, 5 *Id.*, 269.) Much less is so great a degree of exactness required where the averment relates to a court of general jurisdiction."

Again in *State v. Douette*, 31 Wash. 6, 71 Pac. 556, it was said:

"It may be admitted that, under the technical rules of pleading at common law, this information would be defective and insufficient. But the common-law forms of pleading have been changed and simplified by statute in this state, and it is not necessary here to specifically allege that the court had jurisdiction of the cause of action in which the alleged perjury was committed. *Commonwealth v. Knight*, 12 Mass. 274 (7 Am. Dec. 72); *State v. Newton*, 1 G. Greene, 160 (48 Am. Dec. 367.)

"'A direct allegation of authority to administer the oath is sufficient to show the jurisdiction of the court or officer.' 16 Enc. Pl. & Pr. 326.

"It is provided in paragraph 6857 of Bal. Code that:

"'In an indictment or information for perjury, or subornation of perjury, it is sufficient to set forth the substance of the controversy or matter in respect to which the crime was committed, and in what court or before whom the oath alleged to be false was taken, and that the court or person before whom it was taken had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned; but the indictment or information need not set forth the pleadings, record or proceedings with which the oath is connected, nor the commission or authority of the court or person before whom the perjury was committed.'

"It is apparent that under the provisions of this section of the statute it is sufficient, so far as the question of jurisdiction is concerned, to set forth in the information in what court or before whom the alleged false oath was taken, and that the court or person before whom it was taken had authority to administer it. And an examination of this information will disclose that it contains all the averments necessary under the statute. It al-

leges, in substance, that upon the trial by a jury of the case of State v. Vance for murder in the first degree, in the superior court of Pierce county, the appellant was then and there duly sworn as a witness by Samuel Walker, who was then and there deputy clerk of said court, and had competent and sufficient power and authority to administer said oath in that behalf. The information does not expressly allege that the superior court of Pierce county had jurisdiction of the case in which the alleged perjury was committed, but that the court had in fact jurisdiction of the Vance case, is, we think, necessarily implied from the averments that it was a case of felony, and was tried in that court. Our superior courts are vested by the Constitution with jurisdiction 'in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law.' Constitution, art. 4, par. 6. The averment in the information that the oath alleged to be false was taken in a certain superior court shows *prima facie* that the court had jurisdiction of the proceedings in which the oath was administered. The question here under consideration was presented to and determined by the Supreme Court of Colorado, in *Thompson v. People,* 26 Colo. 496 (59 Pac. 52), under a statute similar in substance to ours. And in that case the court, after quoting the statute, said:

" 'It will be observed that by the provisions of this section it is sufficient to aver in the information that the court or authority before which the oath was taken had full power to administer the same. This section is substantially the same as the statute 23, George II. chap. 11. Under that statute the English decisions are that it is only necessary to state the substance of the offense, the name of the court, and aver the court's authority to administer the oath. To the same effect are the decisions in this country, under similar statutes. * * * While it is true that the information does not contain an express averment that the district court of El Paso county had jurisdiction of the case in which the alleged false testimony was given, it does aver that upon the trial of a certain criminal case, of which that court *prima facie* had cognizance, the plaintiff in error was duly sworn as a witness by the deputy clerk, and that he had sufficient authority to administer the oath. We think, therefore, that in this particular the information not only conforms to the requirements of the statutes, but by necessary implication states that the proceeding in which the oath was administered was one over which the district court had

jurisdiction. Nor is the information defective because of the failure to set forth how or in what way the evidence alleged to be false was material to the issue. It is well settled that it is sufficient if its materiality appears either from the facts alleged, or by direct averment.'

"The objection that it does not appear from any averment in the information that the superior court of Pierce county had jurisdiction of the case of State v. Vance is not tenable, and the court below committed no error either in denying the motion to set aside the information or in overruling the demurrer to the information interposed by the appellant."

Also, in *Fitch v. Com.*, 92 Va. 824, 24 S. E. 272, the court held likewise, saying:

"The effect of this statute was to dispense with the necessity of setting out the record or the facts to show the jurisdiction of the tribunal, or of alleging in terms that it had jurisdiction over the cause or proceeding in which the false testimony was given. It was thereafter held by the courts of England to be sufficient to set forth the substance of the offense, and the name of the court before which the oath was taken, to aver that it had competent authority to administer the same, and to falsify by proper averments the defendant's assertions. 3 Russell on Crimes, 59; 2 Chitty on Cr. Law, 287; Archbold's Cr. Pl. and Pr. 1719; *Lavey v. The Queen*, 79 E. C. L. 496; and 2 Bishop on Cr. Pr., sec. 914. Many of the states have enacted the same or a like statute, and the same effect has been given to it by their courts as was done by the courts of England. 2 Bish. Cr. Pr., sec. 848. See, also, *The People v. Phelps*, 5 Wend. 9; *Campbell v. People*, 8 Wend. 636; *Commonwealth v. Knight*, 12 Mass. 274; *State v. Ledford*, 6 Ired. 5; *State v. Davis*, 69 N. C. 495; and *State v. Stillman*, 7 Colo. 345. * * * It follows, therefore, that it is now unnecessary in this state to set forth the record of the case upon the trial whereof the false testimony was given, or to aver the jurisdiction of the tribunal over it; but only necessary, instead thereof, to state the substance of the offense charged against the accused, in what court or by whom the oath was administered which is charged to have been falsely taken, and to aver that such court or person had competent authority to administer the same, together with proper averments to falsify the matter wherein the perjury is assigned."

To the same effect is *Halleck v. State,* 11 Ohio, 400, in which the court said:

"The objection to the indictment is, that it does not show that Crosby, before whom the perjury is alleged to have been committed, had any jurisdiction to administer the oath, inasmuch as it does not set forth that a complaint, in writing, on oath or affirmation, was made before him. The indictment charges, that the plaintiff's offense was committed before David Crosby, a justice of the peace for Saybrook, in the county of Ashtabula; and, it avers that said Crosby had full power and authority to administer the oath; that it was taken on the hearing of a complaint against said Southwick, for perjury, which complaint had been made in due form of law, and was then on hearing before said Crosby, as such justice. It may be admitted that this general form of allegation would be bad, by the rules of common law, without it necessarily following that the court of common pleas erred in refusing to arrest judgment in this case, for, by recurring to section 11 of the act providing for the punishment of crimes, Swan's Stat. 231, it will be seen that, in this state, the common law has been modified by express legislation. Section 11 provides 'that, in an indictment for perjury, it shall be sufficient to set forth the substance of the offense charged upon the defendant, and before what court or authority the oath or affirmation was taken, averring such court or authority to have had full power to administer the same without setting forth any part of any record or proceeding, in law or equity,' etc.

"A careful comparison of this indictment with the section of this statute (parts of which I have given) will convince the mind that it contains all the averments which our statute requires, and that the court of common pleas could not have pronounced it defective without disregarding the law, and requiring of the prosecutor something beyond what it had made sufficient."

In *People v. Phelps,* 5 Wend. 10, it was held, that "In an indictment for perjury by an insolvent debtor, in the oath taken by him on presenting his petition and the inventory of his estate required by the statute, it is not necessary to set forth the facts which give jurisdiction to the officer, as is done in pleading a discharge in a civil suit; it is enough to aver that the officer had lawful and competent authority to administer the oath."

And again in *Kizer v. People*, 211 Ill. 407, 71 N. E. 1035, the court said:

"An averment in an indictment for perjury that the accused was duly sworn before the clerk of the court in which the trial was had and that the clerk 'had full power and authority to administer the oath,' is, in legal effect, an averment that the court had jurisdiction of the subject matter."

To the same effect, also, are *Maynard v. People*, 135 Ill. 416, 25 N. E. 740; *Thompson v. People*, 26 Colo. 496, 59 Pac. 51; *People v. DeCarlo*, 124 Cal. 462, 57 Pac. 383; *State v. Newton* (Iowa) 1 Greene, 160, 48 Am. Dec. 367; *Com. v. Knight*, 12 Mass. 273, 7 Am. Dec. 72; *State v. Keel*, 54 Mo. 182; *Burns v. People*, 59 Barb. 531; *State v. Green*, 100 N. C. 419, 5 S. E. 383; *State v. Roberson*, 98 N. C. 751, 4 S. E. 511; *People v. Greenwell*, 5 Utah, 112, 13 Pac. 89; *State v. Belew*, 79 Mo. 584.

The information in question charged that plaintiff in error "was then and there duly sworn to testify truly in said cause by E. A. Coker, the duly acting and qualified deputy clerk of the district court aforesaid, who was then and there duly authorized and empowered to administer oaths in such cases, and to administer said oath in that case, in manner and form as was then and there done as aforesaid." And under the statute and its uniform construction this was a sufficient allegation of the court's jurisdiction. The demurrer was therefore properly overruled.

The next assignment is that "the court erred in not instructing the jury that the evidence introduced by the state showing the trial and conviction of John Cieloha was introduced only for the purpose of showing that the evidence was given in a judicial proceeding as alleged in the information, and limiting its effect to such purpose only."

The only evidence in the record tending to show the conviction of John Cieloha is to be found in the cross-examination of W. H. Hohimar, one of the witnesses for the defendant, wherein the county attorney asked the question, "You know that they have all been convicted?" To which the witness answered, "Yes, sir."

4 Cr.—20

No objection was made to this question or answer, nor was any request made to the trial court for an instruction limiting the effect of this testimony. The question and answer were both incompetent; but as plaintiff in error did not see fit to object to the same, and inasmuch as she requested of the court no instruction limiting the purpose for which the testimony could be considered, she is not now in a position to complain that the court did not give such instruction. Such an instruction, though proper, would have been merely adjective and collateral to the main issue, and it is not one of that character which the court was bound to give without a request therefor.

It is next urged that the court erred in instructing the jury as follows:

"The testimony complained of as given by the defendant must not only have been false and material to the issue, but must have been wilfully and corruptly false. It was wilfully false if the defendant and John Cieloha were not present in Muskogee at the carnival show on the evening of June 11, 1908, yet she testified that they were present, she knowingly and intentionally testified to what was untrue."

It is contended that this instruction was misleading and prejudicial to the defendant, in that it was subject to be interpreted as stating as a fact that plaintiff in error testified that she and John Cieloha were present in Muskogee on the occasion in question, and that she thereby knowingly and intentionally testified to what was untrue. The instruction was not happily framed, but we are satisfied that the jury could not have misinterpreted it; we think it apparent to anyone that the court meant to tell the jury that the testimony was wilfully false, if the defendant and John Cieloha were not present in Muskogee at the carnival show on the evening of June 11, 1908, and if she nevertheless testified that they were present, and in so doing knowingly and intentionally testified to what was untrue. This further appears from a consideration of the whole instruction, which proceeds: "You should ask this, was the testimony false, and did Ethel Gray know that it was false? Again, the law says it must have been cor-

ruptly false. If a person in order to help a friend or harm an enemy, testifies falsely for the purpose of misleading the court or the jury, you may well believe and find that her purpose was a corrupt one. If, however, the false testimony is given by mistake, or by inadvertence, and with no purpose of wrongly influencing a court or jury, you cannot convict." The instruction must be considered as a whole; and when so considered, it properly and intelligibly states the law, and mere verbal inaccuracies will not vitiate it.

Next it is contended that the court erred in permitting the prosecution to ask certain of plaintiff in error's witnesses if a charge of perjury was not then pending against them in that court. It was held in *Slater v. United States,* 1 Okla. Cr. 275, 98 Pac. 110, that it is error to ask a witness if he has been indicted, arrested or imprisoned before conviction for any offense. In this case, however, it appears from the answers to the questions objected to that these particular witnesses at the time of their testifying stood charged by information with perjury alleged to have been committed in the trial of this same case against John Cieloha; and we think that those circumstances would constitute an exception to the rule, and that the questions and answers were competent for the purpose of permitting the jury to judge to what extent, if any, these witnesses were interested in the result of this particular case. If two persons are indicted for the same offense, or for different offenses, and it should appear from the evidence that from the acquittal or conviction of one even a slight inference of the guilt or innocence of the other could be drawn, or that the fate of one could have any probable bearing, however remote, upon that of the other, and one should testify either for or against the other, under such circumstances it would not be error for either party to ask the witness and require him to answer whether he was then under indictment for that same or such different offense; and we think that rule applicable in the present case.

Plaintiff in error did not testify in this case; and after each

side had rested, and after the court had instructed the jury, she made the following request:

"By Mr. Marcum: The defendant requests that the testimony of defendant in her former trial stand as her testimony now. The testimony as read by the stenographer. Mr. Crum: The state objects. By the Court: The objection will be sustained. Mr. Marcum: The defendant excepts. By the Court: Let the record show that the court also offers to allow the defendant's attorney to put the defendant on the stand at this time."

There was no error in the court's refusing to tell the jury that the testimony of Ethel Gray given in the trial of the case of John Cieloha, which had been read by the stenographer, should be considered by them as her testimony in this case. The request was a very peculiar one, and is not supported by either reason or authority. If plaintiff in error desired the court and jury to have the benefit of her testimony in this case, it was her duty to take the stand and testify under oath. The court did instruct the jury that the defendant was presumed to be innocent, that this presumption abided with her until it was overcome by competent evidence which established her guilt beyond a reasonable doubt, and that the burden of proof was upon the prosecution to establish each and every material allegation in the information by competent evidence beyond a reasonable doubt before a verdict of guilty was warranted; and from this charge the jury were bound to presume, until the evidence established the contrary beyond a reasonable doubt, that the testimony given by Ethel Gray in the former trial was true. But that presumption was one of law only, and if plaintiff in error desired it reinforced by her personal testimony in this trial, it was necessary that she take the stand and testify.

The judgment of the lower court will be affirmed.

FURMAN, Presiding Judge, and DOYLE, Judge, concur.